Fitzgerald, P.J.
 

 In Docket No. 226214, plaintiff Genesco, Inc., appeals as of right the Ingham Circuit Court order granting summary disposition of its com
 
 *47
 
 plaint seeking judicial review of defendant Michigan Department of Environmental Quality’s (mdeq) failure to approve its environmental remedial action plan. In Docket No. 227466, defendant Genesco, Inc., appeals by leave granted the Muskegon Circuit Court order granting summary disposition of its counterclaims against the MDEQ seeking declaratory relief under the Natural Resources and Environmental Protection Act (nrepa), MCL 324.101
 
 et seq.,
 
 and common-law property rights. In each case, the trial court granted summary disposition under MCR 2.116(C)(4) on the ground that subsection 20137(4) of the nrepa, MCL 324.20137(4), deprived the court of jurisdiction to review preenforcement “response activity selected or approved” by the MDEQ.
 
 [1]
 
 We consolidated the appeals. We affirm.
 

 FACTS
 

 Since 1944, Genesco has operated a leather tannery in the city of Whitehall that is located along the shores of White Lake in an area known as “Tannery Bay.” Other entities operated a tannery at the same site since 1865. These other entities discharged untreated tannery water into White Lake, but Genesco began a staged lagoon treatment operation and, in 1974, connected to the Muskegon wastewater treatment system. It is undisputed that the bottom of
 
 *48
 
 White Lake adjacent to Genesco’s tannery, including its riparian bottomlands, is contaminated with various toxic chemicals
 
 [2]
 
 as a result of historic tannery operations. The best course of remedial action is disputed, with Genesco favoring containment through a restrictive covenant barring the disturbance of its riparian bottomlands and the mdeq and the city of Whitehall (the city) insisting that active remediation in the form of dredging occur.
 

 On June 1, 1999, Genesco filed a “Declaration of Restrictive Covenants” with the Muskegon County Register of Deeds. Making the restrictive covenant its centerpiece, Genesco filed a proposed remedial action plan with the mdeq on June 25, 1999, pursuant to MCL 324.20114. On July 2, 1999, the city filed an action in the Muskegon Circuit Court, seeking a judicial determination about the applicability of part 201, MCL 324.20101
 
 et seq.,
 
 of the nrepa and part 17, MCL 324.1701
 
 et seq.,
 
 of the nrepa to these facts. The city also alleged public nuisance per se attributable to the violation of certain city ordinances and public nuisance in fact.
 

 Genesco, in turn, filed a three-count counterclaim under part 17 against the city and a new party, the mdeq. Genesco alleged that if Genesco is liable for remediation of the sediments, then the city is liable for contribution, and that removal of sediments will violate part 17 because extensive studies performed on the sediments reveal that dredging the bay will destroy the White Lake ecosystem. Genesco also sought declaratory relief against the city and the MDEQ under the nrepa and property law.
 

 
 *49
 
 Additionally, Genesco filed a separate suit against the MDEQ in the Ingham Circuit Court. In each case, the trial court granted summary disposition under MCR 2.116(C)(4), finding that the court lacked subject-matter jurisdiction under MCL 324.20137(4).
 

 i
 

 At issue is whether a circuit court has subject-matter jurisdiction to conduct preenforcement review of a “response activity selected or approved” by the MDEQ within the ambit of part 201, MCL 324.20101
 
 et seq.
 
 Genesco argues that the dredging of White Lake “will pollute, impair, or destroy the environment” in violation of part 17, MCL 324.1701
 
 et seq.
 
 Thus, Genesco argues that part 17 prevails over part 201’s preenforcement bar to judicial review.
 

 Both part 17 and part 201 were previously separate acts that were recodified by 1994 PA 451 into parts of the nrepa. Both have a common goal of protecting the environment. However, the approach of part 17 is to preserve the environment through the obtaining of declaratory and injunctive relief in court, while part 201 encourages the prompt cleanup of hazardous substances through administrative or private action and assignment of financial liability.
 
 Cipri v Bellingham Frozen Foods, Inc,
 
 235 Mich App 1, 4-7; 596 NW2d 620 (1999).
 

 The approaches these two parts of the nrepa take to accomplish their goals through judicial action are very different. Part 17 permits any person to seek declaratory and injunctive relief, MCL 324.1701(1), on “a prima facie showing that the conduct of the defendant has polluted, impaired, or destroyed or is likely
 
 *50
 
 to pollute, impair, or destroy the air, water, or other natural resources or the public trust in these resources . . . MCL 324.1703(1);
 
 City of Jackson v Thompson-McCully Co, LLC,
 
 239 Mich App 482, 487; 608 NW2d 531 (2000). It provides a direct method for enforcing environmental regulations and challenging an administrative agency’s decision without exhausting administrative remedies.
 
 Addison Twp v Gout,
 
 171 Mich App 122, 127; 429 NW2d 612 (1988), rev’d on other grounds
 
 (On Rehearing),
 
 435 Mich 809; 460 NW2d 215 (1990). It is expressly supplementary to other administrative and regulatory procedures provided by law. MCL 324.1706. In granting relief, if there is a standard for pollution or for an antipollution device or procedure, fixed by rule or otherwise, by the state or an instrumentality, agency, or political subdivision of the state, then the court may determine the validity, applicability, and reasonableness of the standard. MCL 324.1701(2). If the court finds the standard to be deficient, then the court may direct the adoption of a standard approved and specified by the court.
 
 Id.
 

 Part 201 was modeled after the federal Comprehensive Environmental Response, Compensation, and Liability Act (cercla), 42 USC 9601
 
 et seq. Flanders Industries, Inc v Michigan,
 
 203 Mich App 15, 21; 512 NW2d 328 (1993). Both the federal and state statutes provide for identification of contaminated sites and for prompt remediation.
 
 Port Huron v Amoco Oil Co, Inc,
 
 229 Mich App 616, 622; 583 NW2d 215 (1998). Both part 201 and the cercla create a private cause of action to establish liability for costs of investigation and remediation of contaminated sites.
 
 Pitsch v ESE Michigan, Inc,
 
 233 Mich App 578, 589; 593 NW2d 565
 
 *51
 
 (1999). Both statutes generally defer to administrative agencies to determine the appropriate response to contaminated sites and limit preenforcement judicial review. MCL 324.20137(4); 42 USC 9613(h). Indeed, part 201 provides that a state court does
 
 not
 
 have jurisdiction to review challenges to a “response activity selected or approved by the department under this part” except in certain enumerated situations, none of which is applicable here. MCL 324.20137(4).
 

 In
 
 Flanders, supra
 
 at 19, an industrial company sought declaratory relief under the Michigan Environmental Response Act (mera) after being identified as a “potentially responsible party” liable for costs to clean up paint sludge discharged to the bottom of Lake Michigan in Green Bay. The trial court had dismissed the complaint under MCR 2.116(C)(4) for lack of subject-matter jurisdiction. This Court first affirmed the trial court’s analysis that an actual controversy did not exist because a declaratory judgment was not necessary to guide the plaintiff’s actions to preserve its legal rights.
 
 Flanders, supra
 
 at 20. This Court also reviewed federal cases that held that the intent of Congress in barring preenforcement judicial review under the cercla was to encourage cleanup of contaminated sites without being delayed by litigation.
 
 Id.
 
 at 21-22. This Court concluded that the mera (now part 201) should be likewise interpreted, opining,
 
 id.
 
 at 22-23:
 

 We endorse the various federal courts’ analyses of the timing provisions of the CERCLA and apply their analytic approaches in construing the mera. The mera, a remedial statute, must be interpreted to minimize delay in removing environmental contamination. If the DNR [Department of Natural Resources] decides to institute a cost recovery
 
 *52
 
 action against plaintiff pursuant to MCL 299.616(1)(b); MSA 13.32(16)(1)(b), plaintiff will have ample opportunity to present the defenses outlined in its complaint. Before the commencement of such an action, a circuit court lacks jurisdiction to hear and decide the matter. Summary disposition under MCR 2.116(C)(4) (lack of subject matter jurisdiction), was proper.
 

 Plaintiff did not need the circuit court’s direction to “guide [its] future conduct in order to preserve [its] legal rights.”
 
 Fieger [v Comm’r of Ins,
 
 174 Mich App 467, 470; 437 MW2d 271 1988]. Plaintiff obviously did not and does not want to pay for the remediation of the contaminated site; however, at this stage, it does not require court intercession to preserve its rights. Its “right” to avoid liability for the clean-up costs can be determined just as effectively after the dnr has instituted a cost recovery action as before. Our conclusion, on review de novo, on this record is the same as the trial court’s—no actual controversy yet existed at the time of the suit.
 

 This Court went on in
 
 Flanders, supra
 
 at 24, to hold that the part of the plaintiffs complaint that also requested declaratory relief under the Michigan Environmental Protection Act (mepa) (now part 17) was properly dismissed under MCR 2.116(C)(8) because the plaintiff had not pleaded that the defendant was about to impair or destroy a natural resource. Thus, the question whether Genesco’s counterclaim under part 17 against the mdeq, which does allege likely destruction and impairment of the aquatic environment, squarely raises the question whether such a claim may pierce the preenforcement bar of subsection 20137(4) of part 201.
 

 The plain language of parts 17 and 201, and the differing approaches to judicial review and participation, seemingly conflict. Statutory construction is thus necessary to resolve the inteiplay between part 17 and
 
 *53
 
 part 201. Parts 17 and 201 must be read in pari materia because they both have the same general purpose of protecting the environment.
 
 State Treasurer v Schuster,
 
 456 Mich 408, 417; 572 NW2d 628 (1998). Parts 17 and 201 must also be read as supplementing each other, as the Legislature has expressly declared in MCL 324.1706 and MCL 324.20102(d), and must be read in the context of the entire statute so as to produce an harmonious whole.
 
 Macomb Co Prosecutor v Murphy,
 
 464 Mich 149, 159-160; 627 NW2d 247 (2001). Seeming inconsistencies should be reconciled if possible.
 
 Gross v General Motors Corp,
 
 448 Mich 147, 164; 528 NW2d 707 (1995).
 

 The above principles of statutory construction dictate that claims under part 17 may not be brought where the underlying controversy is over a “response activity” as defined in part 201. Otherwise, the MDEQ’s efforts to clean up toxic sites might often be delayed by preenforcement litigation and the intent of the Legislature expressed in subsection 20137(4), as well as subsection 20137(5), would be frustrated. This conclusion is further buttressed by the rule of statutory construction that provides that where two statutes or provisions conflict, and one is specific to the subject matter while the other is only generally applicable, the specific statute prevails.
 
 Gebhardt v O’Rourke,
 
 444 Mich 535, 542-543; 510 NW2d 900 (1994).
 

 Moreover, a review of federal authority is instructive in light of the similar purposes of the nrepa and the cercla.
 
 Flanders, supra
 
 at 21. Federal courts have rejected environmental protection claims for want of subject-matter jurisdiction under 42 USC 9613(h) where toxic cleanup remedial action is involved.
 
 Clinton Co Comm’rs v United States Environmental
 
 
 *54
 

 Protection Agency,
 
 116 F3d 1018 (CA 3, 1997) (citizens could not litigate whether the Environmental Protection Agency’s incineration cleanup remedy for former chemical manufacturing site violated federal environmental laws);
 
 Oil, Chemical & Atomic Workers Int’l Union v Pena,
 
 62 F Supp 2d 1 (D DC, 1999) (citizens could not litigate whether the Environmental Protection Agency’s cleanup plan to recycle contaminated metal, as an integral part of removal action under the cercla, required an environmental impact statement under the federal National Environmental Policy Act, 42 USC 4321).
 

 Further, this interpretation does not abrogate part 17 where an mdeq response activity under part 201 is involved. In
 
 State Hwy Comm v Vanderkloot,
 
 392 Mich 159, 178-179; 220 NW2d 416 (1974), the Court held that Const 1963, art 4, § 52 creates a mandatory duty on the Legislature to protect Michigan’s natural resources. However, the Legislature need not specifically provide for the protection of natural resources in every legislative act.
 
 Vanderkloot, supra
 
 at 182. Thus, the Court,
 
 id.
 
 at 189, found that the legislation under review, the highway condemnation act, MCL 213.361
 
 et seq.,
 
 did not violate Const 1963, art 4, § 52. Further, the Court found that the Legislature’s main response to Const 1963, art 4, § 52 was adoption of the mepa, which applied to the state, and all political subdivisions or agencies of the state, including the highway commissioner.
 
 Vanderkloot, supra
 
 at 183-184. Finally, our Supreme Court held that the requirements of Const 1963, art 4, § 52 and of the mepa must be read into the judicial review standard of the commissioner’s administrative action, which was subject
 
 *55
 
 to judicial review for fraud or abuse of discretion.
 
 Vanderkloot, supra
 
 at 170, 190.
 

 The Court’s opinion in
 
 Vanderkloot, supra
 
 at 189, on the effect of the mepa on judicial review of the administrative determination of the “necessity” for taking property for highway purposes is instructive on the question presented in the present case:
 

 ProceduráUy, then, highway condemnation act necessity hearings under MCLA 213.368 should proceed as they have in the past. The legislative intent that EPA [Environmental Protection Act, 1970 PA 127, MCL 691.1201
 
 et seq.}
 
 not supplant the highway condemnation act judicial review section is made explicit in § 6 of epa:
 

 “This act shall be
 
 supplementary
 
 to existing administrative and regulatory procedures provided by law.” MCLA 691.1206; MSA 14.528(206). [Emphasis in the original.]
 

 Thus, the Court in
 
 Vanderkloot, supra
 
 at 190, concluded: “We further hold that the substantive environmental duties placed on the Commission by epa are relevant to MCLA 213.368; MSA 8.261(8) judicial review in that failure by the Commission to reasonably comply with those duties may be the basis for a finding of fraud or abuse of discretion.”
 

 As applied, part 17 supplements, but does not supplant, the denial of subject-matter jurisdiction found in MCL 324.20137(4). The mdeq must comply with part 17, but judicial review is delayed until after response activity is completed. Judicial review under MCL 324.20137(5) to determine if the mdeq’s “decision was arbitrary and capricious or otherwise not in accordance with law” would then include the standards of MCL 324.1703(1) “that there is no feasible and prudent alternative to defendant’s conduct and that his or her conduct is consistent with the promotion of
 
 *56
 
 the public health, safety, and welfare in light of the state’s paramount concern for the protection of its natural resources from pollution, impairment, or destruction.” Accordingly, we conclude that the trial courts properly dismissed Genesco’s mepa claim for lack of subject-matter jurisdiction pursuant to MCL 324.20137(4).
 

 n
 

 Genesco’s argument that deferring judicial review until after the mdeq completes response activity denies it due process is without merit. While Genesco holds riparian rights to the bottomlands of White Lake contiguous with its “upland” property,
 
 Thies v Howland,
 
 424 Mich 282; 380 NW2d 463 (1985), it has no property right in the animals inhabiting the lake bottom or the fishery in White Lake, which are the property of the state. MCL 324.40105. Here Genesco does not claim that its riparian rights will be taken without due process,
 
 Dohany v Birmingham,
 
 301 Mich 30, 41; 2 NW2d 907 (1942), only that removing sediments would “destroy the existing benthic and aquatic environment,” property that Genesco does not own.
 

 Moreover, the process due under the state and federal constitutions is flexible and satisfied as long as fundamental fairness is observed.
 
 Dobrzenski v Dobrzenski,
 
 208 Mich App 514, 515; 528 NW2d 827 (1995). Fundamental fairness is determined by “consideration of the private interest at stake, the risk of an erroneous deprivation of such interest through the procedures used, the probable value of additional or substitute procedures, and the state or government interest, including the function involved and the fiscal
 
 *57
 
 or administrative burdens imposed by substitute procedures.”
 
 Id.
 
 Here, the private property interest at stake is small (the right to keep contaminated sediment at the bottom of White Lake), the risk of erroneous deprivation is correspondingly small, substitute administrative procedures are available for Genesco to provide input to the MDEQ before approval of a remedial action plan as well as judicial review after response activity (albeit deferential and generally limited to the administrative record), and the interest of the government in promptly implementing a remedy for contaminated sites (the health, safety, and welfare of the public) is enormous. The flexible approach to affording due process is not offended on these facts.
 
 Detroit Bd of Ed v Parks,
 
 98 Mich App 22, 41-42; 296 NW2d 815 (1980), aff’d in part 417 Mich 268; 335 NW2d 641 (1983).
 

 m
 

 In Docket No. 226214, Genesco contends that the mdeq’s failure to respond to Genesco’s remedial action plan as either an approval or a denial is subject to judicial review by the circuit court. We disagree.
 

 In the present case, the mdeq responded to Genesco’s submission of a remedial action plan with a letter indicating that it neither approved nor denied Genesco’s remedial action plan because it lacked “the information necessary or required for deq to make its decision.” The mdeq instead made comments designed to facilitate the development of a remedial action plan by Genesco that would be acceptable to the mdeq. The lack of provision for active remediation was a prime concern of the mdeq. The mdeq also noted that it would develop a “work plan to perform
 
 *58
 
 response activities on the sediments.” The MDEQ further requested that Genesco submit a “work plan to perform the necessary response activities to support interim source control activities” and “to address remedial investigation activities necessary to more fully define soil, groundwater, sediment, and overland flow conditions.”
 

 The mdeq’s response to Genesco’s remedial action plan, outlining the need for active remediation and requesting “work plans” and “remedial investigation,” falls within the definitions of “response activity” as provided in part 201. MCL 324.20101. The MDEQ determined it did not have required information necessary to make a decision on Genesco’s remedial action plan and outlined steps Genesco should take under part 201. Therefore, the pre-enforcement bar to judicial review deprived the circuit courts of jurisdiction. MCL 324.20137(4);
 
 Flanders, supra
 
 at 20-23.
 

 Affirmed.
 

 [1]
 

 1994 PA 451, effective March 30, 1995, codified the Michigan Environmental Protection Act, as Part 17 of the nrepa, MCL 324.1701-324.1706.
 
 Cipri v Bellingham Frozen Foods, Inc,
 
 235 Mich App 1, 4, n 2; 596 NW2d 620 (1999). Part 31 of the nrepa is titled “Water Resources Protection” (wrp), MCL 324.3101-324.3133. Part 201 of the nrepa is titled “Environmental Remediation,” MCL 324.20101-324.20302, and formerly was the Michigan Environmental Response Act.
 
 Cipri, supra.
 

 [2]
 

 These chemicals include arsenic, chromium, and mercury.