738 N.W.2d 246 (2007)
Glenn CAIRNS, Alvera Cairns, and Ali Zand, Plaintiffs, and
Dick Coleman, Margaret Coleman, Elaine Feuerstein, Gerald Feuerstein, Margaretta Freburg, Stan Freburg, Becky Leefers, Larry Leefers, Winifred Rome, George Wietor, and Velia Wietor, Plaintiffs-Appellants
v.
CITY OF EAST LANSING, Defendant-Appellee.
Docket No. 271362.
Court of Appeals of Michigan.
Submitted February 6, 2007, 2007, at Lansing.
Decided March 29, 2007, at 9:05 a.m.
Released for Publication August 29, 2007.
*248 Knaggs, Harter, Brake & Schneider, P.C. (by Clifford A. Knaggs, Lawrence P. Schneider, and Melanie M. LeFevre), Lansing, for Dick Coleman and others.
McGinty, Hitch, Housefield, Person, Yeadon & Anderson, P.C. (by Dennis E. McGinty and Thomas M. Yeadon), East Lansing, for the city of East Lansing.
Before: WHITBECK, C.J., and BANDSTRA and SCHUETTE, JJ.
PER CURIAM.
Plaintiffs[1] appeal as of right the trial court's grant of summary disposition under MCR 2.116(C)(4) following its conclusion that it lacked subject-matter jurisdiction over plaintiffs' statutory claims. We reverse and remand.

I. FACTS
This case involves plaintiffs' statutory claims[2] against defendant, the city of East Lansing, arising from defendant's operation of a landfill adjacent to their residential properties.
In 1950, defendant began operating a landfill in Ingham County, under an agreement with the owner of the property. Although the agreement started out as a lease, the owner later donated the filled land to defendant for a park. The land ran parallel to a road, which became Burcham Drive, and the park became Burcham Park. Defendant also purchased additional land in the area from the owner.
Sometime in the 1990s, defendant retained an environmental specialist to determine if Burcham Park was suitable for a soccer field. Defendant reported the results of its soil analysis to the Michigan Department of Environmental Quality (MDEQ). The MDEQ required defendant to determine the full extent of the landfill material so that the landfill could be properly closed. Soil borings indicated that eight residential lots in a neighboring subdivision, which were owned by plaintiffs, had various levels of landfill material.
The MDEQ imposed a number of requirements on defendant to close the landfill. Some soil samples contained unsafe levels of hazardous substances, so defendant was required, in part, to place a "cap" on the landfill, conduct testing and monitoring of the landfill, and make reports to the MDEQ. With regard to the residential lots having landfill materials, the MDEQ would not allow the landfill to remain on those properties unless defendant obtained restrictive covenants to limit the use of the properties or instituted other controls to prevent contact with the landfill material and exposure to shallow ground-water.
Defendant installed a cap and did other remedial work, testing, and monitoring required *249 by the MDEQ. However, plaintiffs gave notice to defendant's manager, the MDEQ, and Michigan's Attorney General of their intent to sue defendant for injunctive and other relief under part 201 the Natural Resources and Environmental Protection Act (NREPA), MCL 324.20101 et seq., because defendant was not performing its responsibilities to investigate and remedy the matter, negotiate compensation for the affected properties, and close the landfill in a reasonable manner.
Plaintiffs filed suit, seeking monetary damages in counts III through V under theories of negligence, nuisance, and a constitutional taking under Const. 1963, art. 10, § 2. In count I, plaintiffs sought injunctive relief under MCL 324.20135 to compel defendant to "comply with its response, investigation, remediation and reporting requirements set forth in Part 201 of NREPA, to remediate Plaintiffs' properties to unrestricted residential closure levels, and award Plaintiffs their litigation costs. . . ." In count II, plaintiffs sought declaratory relief and costs under MCL 324.20126a, alleging that plaintiffs "incurred response activity costs to determine the impact to their properties and stand to incur future costs due to the City's refusal to completely delineate and remediate the impact of the landfill."
In October 2005, defendant moved for summary disposition under MCR 2.116(C)(4) with respect to counts I and II, on the ground that the trial court lacked subject-matter jurisdiction over plaintiffs' NREPA claims. Defendant argued that jurisdiction was lacking because the state was diligently pursuing an administrative action, as indicated in the affidavit of defendant's environmental specialist. Plaintiffs opposed the motion on the ground that defendant had failed to establish the commencement of an administrative action, as recognized by the NREPA. Specifically, plaintiffs argued that the NREPA requires a civil court action to divest the trial court of jurisdiction to hear their claims.
At a hearing on April 12, 2006, the trial court found no allegation or factual basis for concluding that the MDEQ was not acting diligently in this matter. It also determined that the MDEQ was not required to issue an administrative order or file a civil action in order to commence an action under the NREPA; rather the MDEQ could proceed by obtaining voluntary compliance. The trial court concluded that "an action has been commenced, although everyone is cooperating voluntarily at this point; action has been commenced to enforce Part 201, and therefore there is no private cause of action because that is being diligently pursued."
The trial court entered an order, dated April 12, 2006, dismissing plaintiffs' NREPA claims, without prejudice, under MCR 2.116(C)(4). Plaintiffs moved for reconsideration, arguing that the trial court incorrectly construed MCL 324.20135 in finding no jurisdiction. The plaintiffs further argued that, even if the statute were correctly construed, the trial court still had jurisdiction over their cost-recovery claim under MCL 324.20126a. The trial court denied the motion on the ground that there was no palpable error. Plaintiffs now appeal.

II. STANDARD OF REVIEW
We review de novo a trial court's decision to grant or deny summary disposition. Highland-Howell Dev. Co., LLC v. Marion Twp., 469 Mich. 673, 675; 677 N.W.2d 810 (2004). Summary disposition may be granted under MCR 2.116(C)(4) when a trial court lacks subject-matter jurisdiction over an action. Likewise, an issue of subject-matter jurisdiction that turns on an interpretation of statutory provisions is reviewed de novo. Highland-Howell, *250 supra at 675, 677 N.W.2d 810. The primary goal of statutory interpretation is "to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute." G.C. Timmis & Co. v. Guardian Alarm Co., 468 Mich. 416, 420, 662 N.W.2d 710 (2003). If the statutory language is unambiguous, the Legislature is presumed to have intended the meaning expressed. Id.
If a statute does not define a word, a court may consult dictionary definitions to ascertain the plain and ordinary meaning to be given to the word. Koontz v. Ameritech Services, Inc., 466 Mich. 304, 312, 645 N.W.2d 34 (2002). A word is not rendered ambiguous merely because it might be construed in different ways. Id. at 317, 645 N.W.2d 34. Rather, under the doctrine of noscitur a sociis, a word is given a meaning in the context of surrounding words. Id. at 318, 645 N.W.2d 34. Further, words and phrases in a statute are read in the context of the act as a whole to harmonize their meanings and give effect to the entire act. G.C. Timmis & Co, supra at 421, 662 N.W.2d 710.

III. ANALYSIS
Plaintiffs argue that the trial court erred in granting summary disposition under MCR 2.116(C)(4) after it concluded that it lacked subject-matter jurisdiction over their claims. We agree.

A. Part 201 of the NREPA
Part 201 of the NREPA was enacted by 1994 P.A. 451 as part of a repeal and reenactment of the former Michigan Environmental Response Act, MCL 299.601 et seq. Part 201 is supplemented by a reenactment of the former Michigan Environmental Protection Act, now codified in part 17 of the NREPA, MCL 324.1701 et seq. Genesco, Inc. v. Dep't of Environmental Quality, 250 Mich.App. 45, 55, 645 N.W.2d 319 (2002). Part 17 preserves the environment by making available declarative and injunctive relief in a court, while part 201 encourages the prompt cleanup of hazardous substances through "administrative or private action and assignment of financial liability." Genesco, supra at 49, 645 N.W.2d 319.
Among the express purposes of part 201 of the NREPA are:
(c) That it is the purpose of this part to provide for appropriate response activity to eliminate unacceptable risks to public health, safety, or welfare, or to the environment from environmental contamination at facilities within the state.
(d) That there is a need for additional administrative and judicial remedies to supplement existing statutory and common law remedies.

* * *
(g) That to the extent possible, consistent with requirements under this part and rules promulgated under this part, response activities shall be undertaken by persons liable under this part.
(h) That this part is intended to provide remedies for facilities posing any threat to the public health, safety, or welfare, or to the environment, regardless of whether the release or threat of release of a hazardous substance occurred before or after October 13, 1982, . . . and for this purpose this part shall be given retroactive application. However, criminal and civil penalties provided in this part shall apply to violations of this part that occur after July 1, 1991 [MCL 324.20102 (emphasis added).]
Thus, it is apparent from the face of the statute that the Legislature intended to establish both judicial (criminal and civil) and administrative remedies under part *251 201 of the NREPA for environmental contaminations at "facilities."
A "facility" is defined as
any area, place, or property where a hazardous substance in excess of the concentrations which satisfy the requirements of section 20120a(1)(a) or (17) or the cleanup criteria for unrestricted residential use under part 213 has been released, deposited, disposed of, or otherwise comes to be located. Facility does not include any area, place, or property at which response activities have been completed which satisfy the cleanup criteria for the residential category provided for in section 20120a(1)(a) and (17) or at which corrective action has been completed under part 213 which satisfies the cleanup criteria for unrestricted residential use. [MCL 324.20101(1)(o) (emphasis added).]
The "response activity" required in part 201 is itself defined in terms of remedial and other actions:
"Response activity" means evaluation, interim response activity, remedial action, demolition, or the taking of other actions necessary to protect the public health, safety, or welfare, or the environment or the natural resources. Response activity also includes health assessments or health effect studies carried out under the supervision, or with the approval of, the department of public health and enforcement actions related to any response activity. [MCL 324.20101(1)(ee).]
"Remedial action" includes, but is not limited to,
cleanup, removal, containment, isolation, destruction, or treatment of a hazardous substance released or threatened to be released into the environment, monitoring, maintenance, or the taking of other actions that may be necessary to prevent, minimize, or mitigate injury to the public health, safety, or welfare, or to the environment. [MCL 324.20101(1)(cc).]
This case arises from defendant's status as the "owner" or "operator" of a facility. MCL 324.20101(z); MCL 324.20101(y). The "response activity" required of an owner or operator of a facility under part 201 of the NREPA is not dependent on the MDEQ or the Attorney General initiating any action, be it civil, criminal, or administrative, although the duties imposed on the owner or operator do include reporting to the "department."[3] Under MCL 324.20114(1),
an owner or operator of property who has knowledge that the property is a facility and who is liable under section 20126 shall do all of the following:
(a) Determine the nature and extent of a release at the facility.
(b) Report the release to the department within 24 hours after obtaining knowledge of the release. . . .
(c) Immediately stop or prevent the release at the source.
* * *
(g) Diligently pursue response activities necessary to achieve the cleanup criteria specified in this part and the rules promulgated under this part.
MCL 324.20114(2) further provides that prior approval of these response activities is not necessary, unless such activity "is being done pursuant to an administrative order or agreement or judicial decree which requires prior department approval." Moreover, "[a]ny such action shall not *252 relieve any person of liability for further response activity as may be required by the department." MCL 324.20114(2). Additionally, upon the MDEQ's written request, the owner or operator must:
(i) Provide a plan for and undertake interim response activities.
(ii) Provide a plan for and undertake evaluation activities.
(iii) Take any other response activity determined by the department to be technically sound and necessary to protect the public health, safety, welfare, or the environment.
(iv) Submit to the department for approval a remedial action plan that, when implemented, will achieve the cleanup criteria specified in this part and the rules promulgated under this part.
(v) Implement an approved remedial action plan in accordance with a schedule approved by the department pursuant to this part. [MCL 324.20114(1)(h).]
In addition to these remedial efforts, in the face of an "imminent and substantial endangerment to the public health, safety, or welfare, or the environment," the MDEQ is also authorized to take "necessary action" against a liable party,[4] which includes issuing an administrative order requiring a certain response activity within a reasonable time. MCL 324.20119(1) and (2).
Moreover, MCL 324.20139 authorizes criminal prosecutions; MCL 324.20137 authorizes civil actions by the Attorney General seeking various remedies, including injunctive relief, fines, and enforcement of any administrative order issued; and MCL 324.20134(1) authorizes the MDEQ and the Attorney General to enter into a consent order with a liable party. MCL 324.20134 also authorizes the MDEQ and the Attorney General to settle an "administrative or civil action" under part 201 of the NREPA if certain conditions are met.
Contextually, part 201 of the NREPA plainly recognizes that both civil and administrative actions, as well as criminal prosecutions, are possible. The act also recognizes that voluntary remedial action may occur if an owner or operator does what is required under part 201 of the NREPA without an administrative order being issued under the NREPA or an order being entered in a judicial proceeding. But because neither the Attorney General nor the MDEQ is a party in this case, it is immaterial that they have authority to settle an administrative or civil action. The material question here is whether the trial court had jurisdiction over plaintiffs' claims for injunctive and enforcement relief under the limited civil action provision available to parties other than the MDEQ and the Attorney General. MCL 324.20135.

B. Subject-Matter Jurisdiction Under MCL 324.20135(3)(b)
MCL 324.20135 provides, in pertinent part:
(1) Except as otherwise provided in this part, a person, including a local unit of government on behalf of its citizens, whose health or enjoyment of the environment is or may be adversely affected by a release from a facility or threat of release from a facility, other than a permitted release or a release in compliance with applicable federal, state, and local air pollution control laws, by a violation *253 of this part or a rule promulgated or order issued under this part, or by the failure of the directors to perform a nondiscretionary act or duty under this part, may commence a civil action against any of the following:
(a) An owner or operator who is liable under section 20126 for injunctive relief necessary to prevent irreparable harm to the public health, safety, or welfare, or the environment from a release or threatened release in relation to that facility.
(b) A person who is liable under section 20126 for a violation of this part or a rule promulgated under this part or an order issued under this part in relation to that facility.
* * *
(2) The circuit court has jurisdiction in actions brought under subsection (1)(a) to grant injunctive relief necessary to protect the public health, safety, or welfare, or the environment from a release or threatened release. The circuit court has jurisdiction in actions brought under subsection (1)(b) to enforce this part or a rule promulgated or order issued under this part by ordering such action as may be necessary to correct the violation and to impose any civil fine provided for in this part for the violation. . . .
(3) An action shall not be filed under subsection (1)(a) or (b) unless all of the following conditions exist:

(a) The plaintiff has given at least 60 days' notice in writing of the plaintiff's intent to sue, the basis for the suit, and the relief to be requested to each of the following:
(i) The department.
(ii) The attorney general.
(iii) The proposed defendants.
(b) The state has not commenced and is not diligently prosecuting an action under this part or under other appropriate legal authority to obtain injunctive relief concerning the facility or to require compliance with this part or a rule or an order under this part.

* * *
(7) An action under subsection (1)(a) or (b) shall be brought in the circuit court for the circuit in which the alleged release, threatened release, or other violation occurred. [Emphasis added.]
MCL 324.20135, known as part 201's "citizens suit" provision,[5] allows any person to commence a civil action against any owner, operator, or person who is liable under MCL 324.20126. However, subsection 3 establishes two conditions that must be met before a private civil action may be filed. First, notice must be given under subsection 3(a). Second, subsection 3(b) requires that the "state has not commenced and is not diligently prosecuting an action" under part 201 of the NREPA or other appropriate legal authority for injunctive relief or to require compliance with part 201 or a rule or order under part 201. The parties have not raised any issue concerning the adequacy of plaintiffs' notice provided under subsection 3(a). Therefore, we focus on subsection 3(b).
Plaintiffs argue that the Legislature intended the term "action" in MCL 324.20135(3)(b) to refer to a civil action in circuit court and that because the state did not commence such an action in this case, the trial court erred in finding that it lacked subject-matter jurisdiction over plaintiffs' claims. Conversely, defendant contends that the term "action" in subsection 3(b) refers to both civil and administrative *254 actions and that because the state was requiring compliance from defendant, albeit voluntarily, the trial court was correct in concluding that it lacked subject-matter jurisdiction over plaintiffs' claims. We agree with plaintiffs.
Taken alone, the term "action," which is the focus of the parties' dispute, can be broadly interpreted because its commonly understood meaning extends beyond legal proceedings. Numerous definitions of "action" are listed in Random House Webster's College Dictionary (1997), including, but not limited to
1. the process or state of acting or functioning; the state of being active: We saw the team in action. 2. something done or performed; act; deed. 3. a consciously willed act or activity. 4. practical, often organized activity undertaken to deal with or accomplish something: a crisis that requires immediate action. . . . 7. an exertion of power or force: the erosive action of wind. . . . 10. way or manner of moving: the action of a horse. . . . 12. a military encounter, as a battle or a skirmish. . . . 17. a legal proceeding instituted by one party against another. [Emphasis in original.]
"Action" has also been defined as "`1. The process of doing something; conduct or behavior. 2. A thing done. . . . 3. A civil or criminal judicial proceeding.'" CAM Constr. v. Lake Edgewood Condo. Ass'n, 465 Mich. 549, 554, 640 N.W.2d 256 (2002), quoting Black's Law Dictionary (7th. ed.). Despite the broad array of meanings associated with the term "action," however, the parties' jurisdictional dispute in this case depends on the context in which the word "action" is used in MCL 324.20135(3)(b). G C Timmis & Co, supra at 421, 662 N.W.2d 710; Koontz, supra at 318, 645 N.W.2d 34.
Examined in context, we conclude that the term "action," as used in subsection 3(b) applies only to legal, rather than administrative, proceedings. Under subsection 3(b), commencement of a private civil action is permitted only when "[t]he state has not commenced and is not diligently prosecuting an action. . . ." We find the Legislature's use of the term "state" rather than "department" significant, because it is the Attorney General, not the MDEQ, who is authorized to commence a civil action for injunctive relief or compliance on behalf of the "state." MCL 324.20137(1). Further, the word "prosecute" is understood to mean
[as a transitive verb] 1. a. to institute or conduct legal proceedings against (a person). b. to seek to conduct, obtain, or enforce by legal process. 2. to follow up or carry forward (an undertaking), [usually] to completion: to prosecute a war. 3. to carry on or practice. [as an intransitive verb] 4. to institute and carry on a legal prosecution. 5. to act as prosecutor. [Random House Webster's College Dictionary (1997).]
Although it is susceptible to an interpretation akin to the term "pursue," in context we find the use of the term "prosecute" as indicative of the Legislature's intent to require the commencement and prosecution of a legal proceeding, or action, by the Attorney General.
We note that part 201 of the NREPA does provide for limited judicial review of response activities selected or approved by the MDEQ. Genesco, Inc, supra at 51-55, 645 N.W.2d 319. MCL 324.20137 provides in part:
(4) A state court does not have jurisdiction to review challenges to a response activity selected or approved by the department under this part or to review an administrative order issued under this part in any action except an action that is 1 of the following:

*255 * * *
(d) An action pursuant to section 20135 challenging a response activity selected or approved by the department, if the action is filed after the completion of the response activity.
* * *
(5) In any judicial action under this part, judicial review of any issues concerning the selection or adequacy of a response activity taken, ordered, or agreed to by the state are limited to the administrative record. If the court finds that the record is incomplete or inadequate, the court may consider supplemental material in the action. In considering objections raised in a judicial action under this part, the court shall uphold the state's decision in selecting a response activity unless the objecting party can demonstrate based on the administrative record that the decision was arbitrary and capricious or otherwise not in accordance with law. In reviewing alleged procedural errors, the court may disallow costs or damages only to the extent the errors were so serious and related to matters of such central importance that the activity would have been significantly changed had the errors not been made.
Therefore, although under MCL 324.20137 response activities selected or approved by the MDEQ are relevant to the trial court's review in a private civil action under part 201 of the NREPA, such activities do not divest the court of jurisdiction under MCL 324.20135.
As concluded above, a contextual analysis of the term "action" in MCL 324.20135(3)(b) establishes that the citizens-suit provision of part 201 requires a judicial proceeding to bar a private civil cause of action. Looking to the allegations in plaintiffs' amended complaint, we conclude that subject-matter jurisdiction was not lacking because plaintiffs alleged that "[u]pon information and belief, the state of Michigan has not initiated any enforcement action against the City related to the release of hazardous substances at the facility." Further, defendant offered no evidence to contradict this allegation. Accordingly, we conclude that the trial court erred as a matter of law in holding that the evidence that defendant was voluntarily cooperating with the MDEQ deprived it of subject-matter jurisdiction. Defendant's compliance with part 201 of the NREPA, while relevant to plaintiffs' ability to challenge defendant's response activities, did not deprive the trial court of subject-matter jurisdiction under MCL 324.20135(3)(b).
We also reject defendant's reliance on the absurd-results rule to support its interpretation of MCL 324.20135(3)(b). Our Supreme Court in People v. McIntire, 461 Mich. 147, 155 n. 2, 599 N.W.2d 102 (1999), disapproved of the absurd-results rule as an improper invitation to judicial lawmaking, at least in those circumstances in which a statute is unambiguous. See Taylor v. Lansing Bd. of Water & Light, 272 Mich.App. 200, 207, 725 N.W.2d 84 (2006). Further, construing the term "action" in MCL 324.20135(3)(b) to mean a civil judicial proceeding does not cause an absurd result.
Finally, although we are concerned about the implications of our decision that a contextual analysis of the word "action" in MCL 324.20135(3)(b) establishes that the citizens-suit provision of part 201 requires a judicial proceeding to bar a private civil cause of actionwe must enforce the statute as written. Courts often spend inordinate amounts of time and effort chasing the will-of-the wisp of legislative intent when that intent, if it is discernable at all, is best determined from a close parsing of the language that the Legislature *256 actually used when it passed the statute.
In this case, we find it questionable whether the Legislature, if in fact it thought about this issue at all, intended this result. The result has the potential of discouraging voluntary compliance with the NREPA and the MDEQ. This is so because the practical effect of this result will be to encourage violators to insist that the state commence a formal judicial action to operate as a bar to third-party civil actions. Assuming that voluntary compliance is a cost-effective and less time-consuming alternative to formal legal action, it strikes us as unlikely that the Legislature would, again assuming it was even cognizant of the issue, have intended such a result.
We also note that these observations about legislative intent, or the lack of it, cast the absurd-results rule in a somewhat different light. While our Supreme Court has disapproved of the absurd-results rule as an improper invitation to judicial lawmaking, at least in those circumstances in which a statute is unambiguous, there is perhaps another way of posing the question. If we assume for the moment that the statutory language here is at least arguably ambiguous, one could ask the following question: Is it reasonable that the Legislature, in its collective wisdom, and had it considered the question, would have explicitly sanctioned the result that we reach today? One might categorize this approach as the "unintended consequences of well-intentioned acts" rule. Applying this rule, the rather clear answer is that the Legislature, had it thought about it, would not have wished to encourage violators to insist that the state commence a formal judicial action to operate as a bar to third-party civil actions, thereby discouraging voluntary compliance efforts. Therefore, we encourage the Legislature to fully examine the language of MCL 324.20135(3)(b) and the policy considerations of the statute as it is currently written.

C. Subject-Matter Jurisdiction Under MCL 324.20126a
Plaintiffs also argue that the trial court erred in concluding that it lacked subject-matter jurisdiction over their cost-recovery claim under MCL 324.20126a. Specifically, plaintiffs assert that the trial court erred in applying the jurisdictional limits set forth in MCL 324.20135(3) to their claim under MCL 324.20126a. We agree.
Private actions for response-activity costs are permitted under MCL 324.20126a. Indeed, MCL 324.20126a(7) states that the "costs recoverable under this section may be recovered in any action brought by the state or any other person." See also Pitsch v. ESE Michigan, Inc., 233 Mich.App. 578, 589 n. 3, 593 N.W.2d 565 (1999) (noting that the NREPA states the existence of a private cause of action in clearer terms than the former Michigan Environmental Response Act). Therefore, we conclude that the trial court erred in applying the jurisdictional limits set forth in MCL 324.20135(3) to plaintiffs' cost-recovery claim under MCL 324.20126a to conclude that it lacked subject-matter jurisdiction over plaintiffs' claims.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Three plaintiffs, Alvera and Glenn Cairns (the owners of 2660 Raphael Road) and Ali Zand (the owner of 5443 Blue Haven Road), are not appellants in this appeal. Therefore, only the claims pertaining to six residential lots (2612, 2624, 2630, 2638, and 2654 Raphael Road and 5435 Blue Haven Road) are at issue in this appeal.
[2] Plaintiffs also pleaded tort and constitutional claims below. However, the trial court dismissed those claims, and plaintiffs do not challenge the dismissal on appeal.
[3] "Department" is defined in MCL 324.20101(1)(f) as "the director of the department of environmental quality or his or her designee to whom the director delegates a power or duty by written instrument." It is referred to as the MDEQ in this opinion.
[4] As used in part 201 of the NREPA, the phrase "person who is liable" does not presume that liability was adjudicated, but includes a person described in MCL 324.20126 as being subject to liability. See MCL 324.20101(2). An owner or operator of a facility who is responsible for an activity causing a release or the threat of a release falls within the description in MCL 324.20126(1)(a).
[5] See Sparrow, Show me the money: Statutory remedies for private-party environmental contamination claims in Michigan, 1997 Det. Col. L. Mich. St. U.L.R. 1185, 1196.