# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN BUGGS and DANIEL BONAMIE,

        Appellants,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

        Appellee,

and

DTE MICHIGAN GATHERING HOLDING
COMPANY, assignee of ENCANA OIL & GAS
(USA), INC.,

        Petitioner-Appellee.

UNPUBLISHED
January 13, 2015

No. 315058
Public Service Commission
LC No. 00-017195

---

JOHN BUGGS and DANIEL BONAMIE,

        Appellants,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

        Appellee,

and

DTE MICHIGAN GATHERING HOLDING
COMPANY, assignee of ENCANA OIL & GAS
(USA), INC.,

        Petitioner-Appellee.

No. 315064
Public Service Commission
LC No. 00-017196

---

Before:  M. J. KELLY, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

-1-

In this dispute over the construction and use of gas pipelines, appellants, John Buggs and Daniel Bonamie, appeal by right the ex parte orders issued by appellee, Michigan Public Service Commission, which gave petitioner, DTE Michigan Gathering Holding Company, as the successor in interest to Encana Oil & Gas (USA), Inc. (Encana Oil),[1] permission to construct, own, and operate two natural gas pipelines: the Garfield 36 Pipeline (Docket No. 315058) and the Beaver Creek 11 Pipeline (Docket No. 315064). For the reasons more fully explained below, we conclude that the Commission's orders were unlawful. Accordingly, we vacate those orders and remand for a new determination of necessity on each application.

## I. BASIC FACTS

### 1. THE GARFIELD 36 PIPELINE

In January 2013, Encana Oil applied for a certificate of public convenience and approval to construct, own, and operate a 1.9 mile long natural gas pipeline under 1929 PA 9 (Act 9), MCL 483.101 *et seq.* Encana Oil referred to the pipeline as the Garfield 36 Pipeline. Encana Oil represented it would use the pipeline to transport gas recovered from a single well with a recoverable reserve of 2 to 3 billion standard cubic feet of gas. However, it also stated that it anticipated drilling additional wells into the Collingwood formation. It stated that the pipeline would be constructed with anticipated easements and permits "adjacent to the well pad access road" on land owned by the Michigan Department of Natural Resources (the Department) and within the county's right of way to the point where it would connect with Michigan Consolidated Gas Company's Saginaw Bay Pipeline. Encana Oil provided a map of the proposed route and engineering specifications which provided that the pipeline would be capable of transporting up to 40 million standard cubic feet of gas per day. Encana Oil further represented that the pipeline was necessary for its business, that the gas would ultimately be available to Michigan consumers, that without the pipeline there would be no public access to gas reserves in that area, and that the pipeline was "the most efficient and cost-effective means to bring these gas reserves to the public."

Encana Oil also filed an environmental impact assessment with its application. Dean Farrier prepared the assessment and stated that he was a consulting biologist. He represented that the proposed pipeline would be constructed entirely on land owned by the Department and along existing corridors such that there would be "minimal impact to the local ecosystems and land use," and that no alternatives reviewed had less impact. He noted that the route crossed some wetlands and that the pipeline would "be directionally drilled under the series of wetlands for 1027 feet" to "minimize the impact to that feature." He represented that the wetland crossing was exempt from the Natural Resources and Environmental Protection Act, MCL 324.101 *et seq.* Farrier also indicated that clearing would be limited to "the minimum area required for safe and

---

[1] During the pendency of this appeal, Encana Oil moved to substitute DTE Holding as the party in interest after it assigned all of its interests in the pipelines to DTE Holding. This Court granted the motion. However, because all proceedings below occurred while Encana Oil was still a party, for ease of reference we shall refer to Encana Oil, rather than its successor, DTE Holding.

efficient construction," and that to the best of his knowledge there were no threatened or endangered species within the proposed easement or along the proposed route. Finally, he represented that underground pipelines were the safest way to transport petroleum products, and that the potential for release was low and, in any event, unlikely to "significantly harm surrounding plants, wildlife, or soils." Further, although the possibility of ignition and fire was a danger, the human population density in the vicinity was "extremely low."

The Commission approved the proposed pipeline project in an ex parte order issued later that same month.

## 2. BEAVER CREEK 11 PIPELINE

In January 2013, Encana Oil also filed an application for approval and a certificate of public convenience and necessity to construct, own, and operate a 3.1 mile long natural gas pipeline that it referred to as the Beaver Creek 11 Pipeline, which was also to collect gas from the Collingwood formation and connect to Michigan Consolidated Gas Company's Saginaw Bay Pipeline over land belonging to the Department. The pipeline was to service a single well with 2 to 3 billion standard cubic feet of gas but, again, Encana Oil anticipated that it would add "a significant number of wells" in the future. It also again represented that the pipeline was necessary for its business, that without it the public would not have access to gas reserves in the area, and that it was the most efficient and cost-effective means of delivering the gas.

Farrier prepared an environmental impact assessment for this project as well. Farrier again stated that the route was along existing corridors on the Department's land except for a small percentage of the route, which was on land owned by the Department of Transportation; however, he acknowledged that the route crossed privately-owned land and that there were five residences within 1/8th of a mile, but that the route was within the county right-of-way. Again, he represented that to the best of his knowledge there were no threatened or endangered species within the proposed easement or route and that "[c]learing, removal of topsoil, and grading will be limited to the minimum area required for safe and efficient construction." He also said the route "offers the minimal impact to the local ecosystems and land use," and that "[a]lternatives were reviewed and none appeared to have less impact . . . ." As with the other assessment, he asserted that underground pipelines were the safest way to transport petroleum products, that the potential for release was low and unlikely to "significantly harm surrounding plants, wildlife or soils," and that although the possibility of ignition and fire was a danger, the human population density in the vicinity was "extremely low."

The Commission approved the project in an ex parte order issued in January 2013.

The parties do not dispute that both pipelines have since been constructed and have begun transporting gas.

## 3. PROCEEDINGS

In March 2013, Buggs and Bonamie applied for permission to intervene in both of Encana Oil's applications. Specifically, they asked the Commission to consolidate the proceedings, vacate its previous orders, and hold a hearing to receive additional evidence.

-3-

That same month Buggs and Bonamie appealed in this Court and moved to hold the appeals in abeyance pending a decision by the Commission on whether to allow additional evidence. This Court issued an order consolidating the appeals and issued an order staying appellate proceedings and holding the appeals in abeyance until the Commission "disposes of the petition to receive additional evidence and, if additional evidence is received, issues a final order after consideration of the additional evidence."[2]

In April 2013, the Commission denied the petitions to intervene by Buggs and Bonamie on the ground that they were not proper intervenors:

> Mere interest in a proceeding's outcome is insufficient to support intervention. The Commission has long held that prospective intervenors must generally satisfy the two-prong test established in *Association of Data Processing Services Organizations, Inc v Camp*, 397 US 150; 90 S Ct 827; 25 L Ed 2d 184 (1970) . . . . This test requires the party in question to show: (1) that it suffered an injury in fact and (2) that the interest allegedly damaged falls within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.

> . . . Petitioners have failed to satisfy either criterion. Specifically, Petitioners' allegation that protected wildlife and the environment may be harmed as the result of future drilling does not establish that Petitioners have suffered any concrete or discernible injury in fact. In addition, Petitioners' allegations that the plans interfere with their or the public's future use and enjoyment of the area likewise fail to establish that they suffered an injury in fact or that the "damaged interest" falls within the zone of interests Act 9 was designed to protect or regulate.

The Commission later denied Buggs and Bonamie's motion for reconsideration. In denying reconsideration, the Commission rejected the contention by Buggs and Bonamie that it had an obligation to consider the environmental impact of the proposed pipelines:

> [D]espite the Petitioners' assertion that modern law has "overtaken" Act 9, the Commission is required to apply the law as written. Amendments or additions to the Act must come from the Legislature. The Commission lacks the authority to amend the Act or to expand its reach simply because the Petitioners ask it to. Similarly, contrary to the Petitioners' argument that the Michigan Environmental Protection Act "imposes a duty on the state and on agencies like this commission to consider the likely environmental effects of the proposed conduct," the Commission lacks statutory authority to enforce that law or other environmental laws. Further, the Petitioners have failed to identify any specific duties that the law imposes on the Commission.

---

[2] See *In re Application of Encana Oil & Gas Inc re Garfield 36 Pipeline*, unpublished order of the Court of Appeals, entered March 25, 2013 (Docket Nos. 315058, 315064); *In re Application of Encana Oil & Gas Inc re Garfield 36 Pipeline*, unpublished order of the Court of Appeals, entered April 3, 2013 (Docket Nos. 315058, 315064).

The Petitioners also argue that the Commission Staff's (Staff) failure to investigate Encana [Oil]'s environmental impact assessment (EIA), as compared to the Staff's independent environmental review in Case No. U-9138, warrants reconsideration and approval of the petition. Having reviewed the matter, we conclude that there was no legal error or other basis to warrant reversal of our initial decision denying the Petitioners intervention.

Although the Petitioners are correct that, in Case No. U-9138, the Staff conducted its own environmental review in order to conclude that construction would not constitute a "major site activity," that case has no bearing on the matter presently before the Commission. Moreover, the Petitioners cite no legal authority to support their assertion that, because the Staff conducted an independent review of an issue in one Act 9 pipeline case, it must do so in each case. The criteria that the Commission is statutorily authorized to consider in an Act 9 pipeline construction application includes the map of the proposed line, the route, the type of construction and the necessity and practicability of the pipeline so that the Commission may determine whether the proposed construction serves the convenience and necessity of the public. MCL 483.109.

Here, the Petitioners have chosen the wrong forum in which to bring their claims. If they want to protect the natural habitats of the Kirtland's warbler or other wildlife from diminution, or protect the environment from forest fragmentation, they need to file a lawsuit in a court with proper jurisdiction to consider the issues. The Commission is unable to grant the Petitioners' motion for reconsideration because they have chosen the wrong forum in which to seek redress.

In August 2013, Encana Oil moved to dismiss the appeal by Buggs and Bonamie for lack of jurisdiction. A majority of this Court denied the motion because Encana Oil failed to establish that the Court of Appeals lacked jurisdiction:

Petitioner's argument that appellants are not parties in interest within the meaning of MCL 462.26 because they were not parties to the . . . [administrative] proceedings must be rejected because, by equating the phrase "party in interest" used in that statutory provision with the term "party," petitioner would improperly render the words "in interest" nugatory or mere surplusage. See, e.g., *Whitman v City of Burton*, 493 Mich 303, 311-312; 831 [NW2d 223] (2013). Rather, by using the broader phrase "party in interest," the Legislature has necessarily allowed persons or entities who are not parties to the relevant [Commission] case to file an appeal of right from the relevant types of [Commission] orders. Further, contrary to petitioner's argument that one needs to be a party to a case to be an aggrieved party under MCR 7.203(A), there are situations where a non-party to a case is an aggrieved party with standing to appeal. See *Abel v Grossman Investments Co*, [302 Mich App 232; 838 NW2d 204 (2013)]. Also, *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286; 715 NW2d 846 (2006), is inapplicable. Contrary to petitioner's discussion of that case, its holding was not based on the Attorney General not being a named party. See *id.*, 296 n 10.

Rather, the Attorney General was manifestly not an aggrieved party in that case because he was not pursuing an appeal based on an interest in the outcome of the particular case but merely to dispute this Court's construction of a statute. See *id.*, 290. Thus, we need not consider whether *Federated Ins Co* has been undermined by *Lansing Schools Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010). However, we note that review of the June 28, 2013 . . . order is not in the scope of the present appeals from January 31, 2013 orders of the [Commission]. Rather, appellants may only challenge the January 31, 2013 [Commission] orders . . . .[3]

We now consider the issues on appeal.

## II. THE ORDERS

### A. STANDARDS OF REVIEW

Buggs and Bonamie argue that the Commission erred when it issued the orders approving the pipelines without following the requirements stated under Act 9. Specifically, they maintain that, under Michigan's Environmental Protection Act (MEPA), MCL 324.1701 *et seq.*, the Commission had to conduct an environmental review before making its decision concerning the convenience and necessity of the proposed pipelines, which it did not do. Moreover, they argue, Encana Oil's environmental assessments did not provide a sufficient basis for evaluating the environmental impact. Given these defects, Buggs and Bonamie argue that the Commission should have rejected the applications.

Buggs and Bonamie were not parties to the proceedings below and, for that reason, were not able to raise these issues before the Commission before it issued its orders. Thus, this issue was not properly preserved for review. Nevertheless, this Court has the discretion to consider the issue for the first time on appeal. *Bailey v Schaaf (On Remand)*, 304 Mich App 324, 345; 852 NW2d 180 (2014). And, because this claim of error concerns a question of law and all the

---

[3] *In re Application of Encana Oil & Gas Inc re Garfield 36 Pipeline*, unpublished order of the Court of Appeals, entered September 25, 2013 (Docket Nos. 315058 & 315064). Although Buggs and Bonamie have restricted the issues presented on appeal to those involved in the January 2013 order, they have referred to and incorporated pleadings and documents from subsequent proceedings; they refer to affidavits, pleadings, and documents to establish that they live in the area, were not given notice of the applications, and understand that Encana Oil (or DTE Holding) plans to add 500 to 1,700 wells and associated pipelines to the system. Buggs and Bonamie also state their belief that the gas exploration and development activity can have an extreme effect on the landscape, that the habitat of the Kirtland Warbler will be adversely affected, and relate accounts of dead birds. Because these issues were not before the Commission when it issued its orders, we will not consider them in determining whether the Commission erred when it issued those orders. Nonetheless, the Commission's decision on reconsideration of the denial of the motion to intervene is pertinent to understanding the basis of its refusal to allow intervention.

facts necessary for our review have been presented by the parties, and because the failure to consider the claim may result in a miscarriage of justice, we elect to exercise our discretion to consider the issue. See *Autodie, LLC v City of Grand Rapids*, 305 Mich App 423, 431; 852 NW2d 650 (2014).

In order to prevail, Buggs and Bonamie must demonstrate by clear and convincing evidence that the Commission's orders were unlawful or unreasonable. MCL 462.26(8). An order is unlawful if the Commission failed to follow a statutory requirement or abused its discretion. *In re Application of Consumers Energy Co for Rate Increase*, 291 Mich App 106, 109-110; 804 NW2d 574 (2010). The Commission's orders must be authorized by law and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28. This Court reviews de novo whether the Commission exceeded the scope of its authority. *In re Application of Consumers Energy Co*, 291 Mich App at 110. This Court also reviews de novo the proper interpretation of statutes. *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 507; 853 NW2d 481 (2014).

B. ANALYSIS

The Commission is a "creature of the Legislature" possessing only the "authority bestowed upon it by statute"; it "possesses no 'common law' powers." *Union Carbide Corp v Pub Serv Comm*, 431 Mich 135, 146; 428 NW2d 322 (1988). "Thus, a determination of the commission's powers requires an examination of the various statutory enactments pertaining to its authority." *Id.*

The Legislature vested the Commission with the power to control and regulate "corporations, associations and persons engaged, directly or indirectly, in the business of purchasing or selling or transporting natural gas for public use" under Act 9. MCL 483.103. The Commission is further required to "investigate any alleged neglect or violation of the laws of the state by any corporation, association or person purchasing or selling natural gas and transmitting or conveying the same by pipe line or lines for public use . . . ." *Id.*

Anyone proposing to pipe or transport natural gas in Michigan must comply with Act 9. MCL 483.101. Moreover, before constructing a pipeline to transport natural gas, the person proposing to construct the line must apply to the Commission for permission to construct the pipeline. MCL 483.109. The application must include "a map or plat of [the] proposed line or lines which it desires to construct, showing the dimensions and character of such proposed pipe line or lines, its compression stations, control valves, and connections . . . ." *Id.* And the Commission must "examine and inquire into the necessity and practicability of such transmission line or lines and to determine that such line or lines will when constructed and in operation serve the convenience and necessities of the public" before it may approve the construction of the proposed pipeline. MCL 483.109. Thus, although MCL 483.109 does not specifically require the Commission to consider the environmental impact, it plainly permits the Commission to deny permission if after investigating the matter the Commission determines that the new pipeline would not serve the public convenience and necessity.

Since the enactment of Act 9, our Supreme Court has considered whether an agency must consider the environmental impact of a proposed project before granting permission to proceed. In *State Hwy Comm v Vanderkloot*, 392 Mich 159, 167-168; 220 NW2d 416 (1974) (opinion by Williams, J.), landowners opposed the condemnation of land for a highway, arguing in part that it was a swamp area with "increasingly rare or even unique ecological characteristics," and that the duties of the highway commission conflicted with Const 1963, art 4, § 52, relating to the protection of natural resources. In considering this argument, our Supreme Court held that the Legislature has an affirmative duty to enact legislation to protect the environment, but was not required to fulfill this duty by enactment of a specific provision in the highway condemnation act, MCL 213.361 *et seq.*, or every other piece of relevant legislation; instead, the Court explained, it had fulfilled its duty by enacting the environmental protection act.[4] *State Hwy Comm*, 392 Mich at 182-183 (opinion by Williams, J.), 194 (opinion by Levin, J.) (conceding that the environmental protection act provides substantive protections as well as procedural protections, but declining to consider the issue on the record before the Court). The Court explained that the Legislature accomplished this goal through two distinct methods: it provided a cause of action for the protection of Michigan's natural resources, and it provided that subject agencies had certain environmental obligations. *Id.* at 184. The Court determined that the environmental protection act specifically proscribed "pollution, impairment, or destruction" of natural resources "unless it is demonstrated that 'there is no feasible and prudent alternative to [the polluting, impairing, or destroying entity's] conduct and that such conduct is consistent with the promotion of the public health, safety and welfare in light of the state's paramount concern for the protection of its natural resources from pollution, impairment or destruction," and that "[t]his substantive environmental guideline is applicable to the [highway] Commission's administrative condemnation determinations." *Id.* at 185-186 (emphasis removed), citing MCL 691.1203, which has been replaced by MCL 324.1703; see also *Genesco, Inc v Dep't of Environmental Quality*, 250 Mich App 45, 55-56; 645 NW2d 319 (2002). Thus, although the specific provision of the environmental protection act cited by the court addressed the burden of proof for the cause of action created by that act, a plurality of our Supreme Court held that the act also established a substantive standard prohibiting the impairment of natural resources, which applies to an agency's determinations. *State Hwy Comm*, 392 Mich at 186, 190 (opinion by Williams, J.). The Court, however, went on to state that the declaration of necessity in the condemnation proceeding would be *prima facie* evidence of necessity and that a person challenging the agency's determination of necessity would have the burden to prove fraud or abuse of discretion, but that the commission's failure to reasonably comply with its duties could be a basis for finding fraud or an abuse of discretion. *State Hwy Comm*, 392 Mich at 189-190 (opinion by Williams, J.).

---

[4] The original environmental protection act was repealed by 1994 PA 451, and replaced by the Natural Resources and Environmental Protection Act, MCL 324.101 *et seq.*, Part 17 of which is titled the Michigan Environmental Protection Act. The MEPA set forth in Part 17 is substantially similar to the original act.

Buggs and Bonamie argue the Commission did not perform the requisite Act 9 review because, in determining public necessity, it did not sufficiently consider the environmental effect of the pipelines. As noted above, in rejecting the motion for reconsideration, the Commission stated that it had no obligation to consider the environment impact under MEPA, but instead stated that it was required to look to Act 9 alone:

> [C]ontrary to the Petitioners' argument that the Michigan Environmental Protection Act "imposes a duty on the state and on agencies like this commission to consider the likely environmental effects of the proposed conduct," the Commission lacks statutory authority to enforce that law or other environmental laws. Further, the Petitioners have failed to identify any specific duties that the law imposes on the Commission.

The Commission, however, mistakenly characterized the nature of the obligation. Buggs and Bonamie did not ask the Commission to enforce the MEPA or another environmental law. They asked the Commission to comply with its duty to examine and inquire into the necessity and practicability of the pipelines and determine that the pipelines would serve the convenience and necessity of the public. And, under the decision in *State Hwy Comm*, that duty includes an obligation to consider the environmental effect that the proposed pipeline would have. Namely, it had to consider whether the proposed project would impair the environment, whether there was a feasible and prudent alternative to the impairment, and whether the impairment was consistent with the promotion of the public health, safety, and welfare in light of the state's paramount concern for the protection of its natural resources from pollution, impairment, or destruction. *State Hwy Comm*, 392 Mich at 185-186 (opinion by Williams, J.).

As required by Act 9 itself, Encana Oil submitted applications, maps of the proposed gas lines, and specifications for the projects as required by the statute. The Commission's orders make it clear that it reviewed these materials. Both applications, when coupled with the assessments, indicated that the pipelines were necessary for access to the gas reserves in the Collingwood formation and that the proposed routes were those causing the least impact. Thus, Encana Oil provided proof of necessity and practicability, and that there was no feasible and prudent alternative. However, although the Commission found in a cursory manner that the pipelines would serve the public convenience and necessity, it did not otherwise expressly speak to necessity, practicability, feasibility, or prudence in its orders. Moreover, it did not address whether any impairment was consistent with "the promotion of the public health, safety and welfare in light of the state's paramount concern for the protection of its natural resources from pollution, impairment or destruction." *State Hwy Comm*, 392 Mich at 185 (opinion by Williams, J.). Thus, the Commission failed to follow the substantive requirement of MEPA, a statutory requirement independent of Act 9, and accordingly, its orders were unlawful.

Although MCL 324.1705(2) required a determination that took an environmental element into account, appellants incorrectly suggest that it required the Commission to conduct an independent investigation. There is no language in the statute to suggest that the Commission had any such duty. Moreover, *State Hwy Comm* indicated that the environmental effect of conduct had to be considered in making a determination, but it did not suggest that an agency had an independent duty to investigate. Thus, to the extent that the materials in Encana Oil's applications would allow the Commission to make a determination consistent with Act 9 and

MCL 324.1705(2), the Commission could base its determination on those materials. In this regard, it is noted that the motions to intervene were not before the Commission at the time it made its determinations regarding Encana Oil's applications. Thus, the allegations in those petitions did not have to be considered. However, Farrier indicated that there would be impairments to natural resources in his environmental impact assessments. He indicated that there would be, among other impairments, clearing of vegetation, but that the route would offer minimal impact because it would be along existing corridors. He further indicated that alternatives were reviewed and none appeared to have less impact. The Commission noted that these environmental assessments had been attached to the applications. However, it did not discuss the contents or expressly adopt Farrier's representation that alternatives were reviewed and none appeared to have less impact, i.e., that there was no feasible and prudent alternative to the impairment, and did not address whether the impairment was consistent with the promotion of the public health, safety, and welfare in light of the state's paramount concern for the protection of its natural resources from pollution, impairment, or destruction. *State Hwy Comm*, 392 Mich at 185 (opinion by Williams, J.). Accordingly, it is necessary to remand this case for the Commission to expressly make such a determination.

Buggs and Bonamie argue that Farrier's environmental impact assessments were insufficient to allow the Commission to make the requisite findings required by the MEPA. They claim that the assessments themselves should have caused the Commission to realize that they were inadequate on their face: Farrier analyzed the impact within the proposed easement, but did not include the impact on the environment in the vicinity; Farrier professed not to know of protected or endangered species, but did not certify that there were none; and Farrier claimed to be a biologist, but listed no supporting credentials. They also assert that the assessments were not signed or dated. However, the cover pages bore a date of January 2013 and indicated that they were prepared by Farrier. Buggs and Bonamie cite no authority that speaks to the requisite sufficiency of proofs on which the Commission must base its decision. The assessments described the routes along existing corridors, indicated that to the best of Farrier's knowledge "there were no threatened or endangered species within the proposed easements" or "along the proposed routes," described the clearing that would take place, and represented that the

> workspace will be graded as near as possible to pre-construction contours and/or restored in accordance with Kalkaska County Road Commission permit requirements, and natural runoff and drainage patterns will be restored. All existing improvements, such as fences, gates, bar ditches, and beaver deceivers, will be maintained and repaired to as good as or better than pre-construction conditions. Permanent erosion control measures will be installed, and all disturbed workspace will be reseeded.

Although Buggs and Bonamie's claims that the Kirtland Warbler is protected or endangered and that its habitat would be affected are troubling, allegations to this effect were not before the Commission at the time it reviewed the applications. Moreover, allegations that Encana Oil intended to add more pipelines that would create new corridors would seem to be pertinent to future applications for pipeline approval, but not to the lines at issue. While the Commission might have been inclined to seek more information if cognizant of the requirement that it assess whether there were feasible and prudent alternatives and whether the conduct is consistent with the promotion of the public health, safety, and welfare in light of the state's

paramount concern for the protection of its natural resources from pollution, impairment, or destruction, the representations made by Farrier in the Assessments were not inherently suspect such that they could not be deemed substantial evidence on the whole record to support the Commission's findings.

## III. CONCLUSION

Although the Commission minimally complied with the requirements for approving the applications under Act 9, it failed to follow the independent statutory requirement imposed under MEPA. Because its orders approving the pipelines were unlawfully issued, we vacate those orders and remand for a new necessity determination in both dockets. In making its new determinations of necessity, the Commission shall specifically address the environmental impact as required under the MEPA and the decision in *State Hwy Comm*, 392 Mich at 184-190 (opinion by Williams, J.).

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. We further order that none of the parties may tax their costs. MCR 7.219(A).


/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter