1031 LAPEER LLC v RICE

Docket No. 290995. Submitted July 13, 2010, at Detroit. Decided August 5, 2010. Approved for publication October 7, 2010, at 9:00 a.m.

1031 Lapeer LLC and William R. Hunter brought an action in the Oakland Circuit Court against Ricky L. Rice, doing business as R. L. Rice Properties, alleging that defendant failed to inform them that property they had leased from him was contaminated. Plaintiffs sought rescission of the lease and damages, claiming that defendant had committed silent fraud and fraudulent misrepresentation and had breached the lease. Plaintiffs moved for partial summary disposition, after which defendant also moved for partial summary disposition. The court, Steven N. Andrews, J., denied defendant's motion and granted partial summary disposition in favor of plaintiffs, concluding that the lease was void because defendant had failed to disclose that the property was contaminated. Plaintiffs' fraud claims proceeded to trial. The jury found in plaintiffs' favor, and a judgment was entered against defendant. Defendant appealed.

The Court of Appeals *held*:

1. Part 201 of the Natural Resources and Environmental Protection Act, MCL 324.20101 *et seq.*, provides for appropriate response activities related to environmental contamination. MCL 324.20116(1) prohibits a person from transferring an interest in real property that is a "facility," as defined by MCL 324.20101(o), without notifying the transferee in writing that the property is a facility and disclosing the general nature and extent of the contamination. Although the act does not specify a remedy for a violation of this provision, contracts founded on acts prohibited by statute or made in violation of public policy are void. Given that defendant did not dispute that the property at issue was considered a facility, he was prohibited from transferring an interest in the property without providing plaintiffs written notice that the property was a facility. Because defendant failed to provide such notice, the lease contract was founded on an act prohibited by statute and was thus void. Public policy also supported this finding. Enforcement of the contract made without the disclosure

would be against public policy because it exposed plaintiffs to significant costs and liability. Thus, the trial court correctly ruled that the lease contract was void.

2. Defendant's argument that he was entitled to summary disposition on plaintiffs' fraud claims because plaintiffs did not reasonably rely on defendant's alleged misrepresentations failed. Defendant had actual knowledge of the contamination and did not unequivocally advise plaintiffs of that fact in writing. A misrepresentation need not be by words alone, but can be shown if a party required to disclose intentionally suppresses material facts to create a false impression to the other party. Whether defendant intentionally failed to advise plaintiffs of the contamination and whether the contract reasonably placed plaintiffs on notice of the contamination were proper questions for the jury.

Affirmed.

PROPERTY — ENVIRONMENT — NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT — TRANSFER OF FACILITIES — FAILURE TO PROVIDE WRITTEN NOTICE THAT THE PROPERTY WAS A FACILITY — EFFECT ON CONTRACT.

Part 201 of the Natural Resources and Environmental Protection Act prohibits a person from transferring an interest in real property that meets specific criteria with respect to environmental contamination and thus is defined as a "facility" under the act without notifying the transferee in writing that the property is a facility and disclosing the general nature and extent of the contamination; there is no statutorily specified remedy for a violation of this requirement, but contracts founded on acts prohibited by statute or made in violation of public policy are void; thus, a contract transferring an interest in property that is a facility without the required notice is void (MCL 324.20101[o], 324.20116[1]).

*Phillip B. Maxwell & Associates, P.L.L.C.* (by *Phillip B. Maxwell*), for plaintiffs.

*Hartrick & Chapman, P.L.L.C.* (by *Bruce G. Hartrick*), for defendant.

Before: SHAPIRO, P.J., and SAAD and SERVITTO, JJ.

PER CURIAM. Defendant appeals as of right a trial court order granting partial summary disposition in

plaintiffs' favor and denying defendant's motion for partial summary disposition. Because the trial court properly found the lease at issue void, and because defendant was not entitled to partial summary disposition in his favor, we affirm.

In May 2006, plaintiffs and defendant entered into a lease agreement whereby plaintiffs were to lease a gas station from defendant for a period of 10 years. Apparently, the site of the gas station had been found to be a site of environmental contamination in 1996—a fact known by defendant but not disclosed to plaintiffs at the time of the lease. Plaintiffs contacted the Michigan Department of Environmental Quality (MDEQ) in late 2007 and were advised of the contamination. They thereafter initiated the instant lawsuit, alleging that defendant had violated his statutory duty to inform them of the property's status as a site of environmental contamination. Plaintiffs' specific causes of action included silent fraud, fraudulent misrepresentation, and breach of the lease. Plaintiffs sought damages as well as rescission of the lease.

Plaintiffs moved for partial summary disposition pursuant to MCR 2.116(C)(10), contending that the lease at issue was void and that they had established the elements of their claims against defendant, leaving only the issue of damages for trial. Defendant also moved for partial summary disposition in his favor asserting, among other things, that plaintiffs had failed to exhaust their administrative remedies under the former Michigan Environmental Response Act, that plaintiffs' claims were barred by the statute of frauds, and that plaintiffs had not reasonably relied on any alleged written or oral representation.

The trial court granted plaintiffs' motion for partial summary disposition and denied defendant's motion for partial summary disposition, ruling:

The first portion of Plaintiffs' Motion for Summary Disposition based on MCL 324.20116(1) on the grounds that subject lease for 1031 Lapeer Road was prohibited because of Defendant's failure to disclose to Plaintiffs the fact that the site was contaminated, is granted and the subject lease is determined to be void. Consequently, Defendant's Motion for Partial Summary Disposition seeking a determination of liability under the subject lease is denied, with prejudice.

The second portion of Plaintiff's [sic] Motion for Summary Disposition regarding Plaintiff's [sic] fraud counts is denied, without prejudice.

Plaintiffs' fraud claims proceeded to trial, and the jury ultimately found in plaintiffs' favor. Judgment was accordingly entered against defendant in the amount of $83,000 plus interest and costs. This appeal followed.

On appeal, defendant challenges the trial court's order declaring the lease at issue void, granting plaintiffs' motion for partial summary disposition, and denying defendant's motion for partial summary disposition. We review de novo a trial court's decision on a motion for summary disposition. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). A motion brought under MCR 2.116(C)(10) tests a claim's factual support. "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). Summary disposition may be granted under MCR 2.116(C)(10) when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Steward v Panek*, 251 Mich App 546, 555; 652 NW2d 232 (2002). "Additionally, we review de novo issues of statutory

interpretation." *Universal Underwriters Ins Group v Auto Club Ins Ass'n,* 256 Mich App 541, 544; 666 NW2d 294 (2003).

On appeal, defendant first asserts that partial summary disposition in plaintiffs' favor was inappropriate because a failure to disclose to a tenant that property has been determined to be a site of "environmental contamination," as defined in MCL 324.20101(1)(o), does not void the parties' commercial lease. We disagree.

Part 201 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.20101 *et seq.,* was enacted by 1994 PA 451 as part of the repeal and reenactment of numerous environmental statutes. Part 201 was the reenactment of the former Environmental Response Act, MCL 299.601 *et seq. Cairns v East Lansing,* 275 Mich App 102, 108; 738 NW2d 246 (2007). MCL 324.20102 includes the following among the express purposes of part 201 of NREPA:

> (c) That it is the purpose of this part to provide for appropriate response activity to eliminate unacceptable risks to public health, safety, or welfare, or to the environment from environmental contamination at facilities within the state.

> (d) That there is a need for additional administrative and judicial remedies to supplement existing statutory and common law remedies.

> \*   \*   \*

> (h) That this part is intended to provide remedies for facilities posing any threat to the public health, safety, or welfare, or to the environment, regardless of whether the release or threat of release of a hazardous substance occurred before or after October 13, 1982, the effective date of the former environmental response act, Act No. 307 of the Public Acts of 1982, and for this purpose this part shall be given retroactive application. However, criminal and

civil penalties provided in this part shall apply to violations of this part that occur after July 1, 1991.

Consistently with those purposes, part 201 provides for certain penalties for violations of specific provisions within the act. For example, MCL 324.20107a(1)(a) states that a person who owns or operates property that the person knows is a facility containing hazardous substances shall, among other things, undertake measures that are necessary to prevent exacerbation of the existing contamination. MCL 324.20107a(2) provides, "Notwithstanding any other provision of this part, a person who violates subsection (1) is liable for response activity costs and natural resource damages . . . ." There is no specified remedy, however, for a violation of MCL 324.20116(1).

MCL 324.20116(1), a component of part 201 of NREPA, provides:

> A person who has knowledge or information or is on notice through a recorded instrument that a parcel of his or her real property is a facility shall not transfer an interest in that real property unless he or she provides written notice to the purchaser or other person to which the property is transferred that the real property is a facility and discloses the general nature and extent of the release.

"Facility," for purposes of MCL 324.20116(1), is defined as

> any area, place, or property where a hazardous substance in excess of the concentrations which satisfy the requirements of [MCL 324.20120a(1)(a)] or (17) or the cleanup criteria for unrestricted residential use under part 213 [MCL 324.21301 *et seq.*] has been released, deposited, disposed of, or otherwise comes to be located. Facility does not include any area, place, or property at which response activities have been completed which satisfy the cleanup criteria for the residential category provided for in [MCL 324.20120a(1)(a)] and (17) or at which corrective action

has been completed under part 213 which satisfies the cleanup criteria for unrestricted residential use. [MCL 324.20101(o).]

Defendant does not dispute that the gas station he leased to plaintiffs is considered a "facility" under this definition or that he leased the premises to plaintiffs without advising them of its status as a facility, contrary to MCL 324.20116(1). Defendant does dispute, however, whether a transfer of an interest in property in violation of MCL 324.20116(1) necessarily renders the transfer instrument (in this case, the lease contract) void.

As previously indicated, there is no remedy specified for a violation of MCL 324.20116(1). But "[c]ontracts founded on acts prohibited by a statute, or contracts in violation of public policy, are void." *Michelson v Voison*, 254 Mich App 691, 694; 658 NW2d 188 (2003). Again, MCL 324.20116(1) provides that if a person knows that the real property is a facility, the person "shall not" transfer an interest in that real property *unless* he or she provides written notice to the transferee that the real property is a facility. The word "shall" is generally used to designate a mandatory provision. *AFSCME, AFL-CIO Mich Council 25 v Highland Park Bd of Ed*, 214 Mich App 182, 186; 542 NW2d 333 (1995). Conversely, then, the term "shall not" may be reasonably construed as a prohibition. Because defendant was prohibited from transferring any interest in the property at issue unless he provided plaintiffs with written notice that the property was a facility, and defendant admittedly failed to provide plaintiffs with such a written notice, the contract was founded on an act prohibited by statute and was thus void.

Moreover, public policy supports finding the contract void. MCL 324.20107a provides:

(1) A person who owns or operates property that he or she has knowledge is a facility shall do all of the following with respect to hazardous substances at the facility:

(a) Undertake measures as are necessary to prevent exacerbation of the existing contamination.

(b) Exercise due care by undertaking response activity necessary to mitigate unacceptable exposure to hazardous substances . . . .

\* \* \*

(2) Notwithstanding any other provision of this part, a person who violates subsection (1) is liable for response activity costs and natural resource damages attributable to any exacerbation of existing contamination and any fines or penalties imposed under this part resulting from the violation of subsection (1) . . . .

"Operator" is defined at MCL 324.20101(1)(y) as "a person who is in control of or responsible for the operation of a facility." Plaintiffs, having run the gas station and car wash located on the property found to be a facility, are arguably operators of the facility.

Given that one who obtains ownership over or becomes an operator of a facility risks exposure to potentially significant costs and liability, enforcement of a contract made without the disclosure required under MCL 324.20116(1) would be against public policy. "It is well established that the courts of this state will not enforce, either in law or in equity, a contract which violates a statute or which is contrary to public policy." *Shapiro v Steinberg*, 176 Mich App 683, 687; 440 NW2d 9 (1989). The trial court appropriately found the lease contract at issue to be void.

Defendant next contends that summary disposition was appropriate in his favor on any one of the grounds

he presented to the court in his motion for partial summary disposition. We disagree.

Defendant presented four distinct grounds to the trial court on which he claimed summary disposition was appropriate in his favor: plaintiffs' lack of legal capacity to sue, plaintiffs' failure to exhaust their administrative remedies, application of the statute of frauds to plaintiffs' claims and the existence of no genuine issue of material fact, and no reasonable reliance by plaintiffs on any alleged written or oral misrepresentation. We shall address each ground in turn.

With respect to a lack of legal capacity to sue, defendant asserts that the lease at issue was signed on May 30, 2007, by plaintiff William Hunter, Brian Hunter, and Owen W. O'Berry, Jr., doing business as 1031 Lapeer LLC. Defendant points out that the lease is not with 1031 Lapeer, a Michigan corporation, and, in fact, 1031 Lapeer was not incorporated until June 1, 2007—after the lease was signed. We would note, however, that the lease identifies the signatories, "DBA 1031 Lapeer LLC," as tenants and that the lease was signed by the named parties "d/b/a 1031 Lapeer LLC." Furthermore, even if 1031 Lapeer lacked the legal capacity to sue, the complaint was not filed solely in the name of 1031 Lapeer. Instead, William R. Hunter is also a named plaintiff. That being so, it is unclear what effect defendant would hope the potential dismissal of 1031 Lapeer as a plaintiff would have.

In any event, defendant has cited no law whatsoever, or even a basic court rule, to support his position. An appellant may not, in his or her brief on appeal, simply announce a position or assert an error and then leave it to this Court to discover and rationalize the basis for the appellant's claims, unravel and elaborate upon the arguments, and search for authority to support his or

her position. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Defendant has thus abandoned this claim.

Defendant next asserts that summary disposition should have been granted in his favor because of plaintiffs' alleged failure to exhaust their administrative remedies. According to defendant, MCL 324.20135(3)(a) requires that before one may bring a private action against an "owner or operator" for injunctive relief, a written notice of intent to sue must be given to the MDEQ and that, additionally, a cause of action may not be brought if the state is not diligently pursuing compliance. Defendant contends that because no notice was provided as required by statute and the state of Michigan is working with defendant toward compliance, plaintiffs' action is barred. We disagree.

MCL 324.20135 provides:

> (1) Except as otherwise provided in this part, a person, including a local unit of government on behalf of its citizens, whose health or enjoyment of the environment is or may be adversely affected by a release from a facility or threat of release from a facility, other than a permitted release or a release in compliance with applicable federal, state, and local air pollution control laws, by a violation of this part or a rule promulgated or order issued under this part, or by the failure of the directors to perform a nondiscretionary act or duty under this part, may commence a civil action against any of the following:
>
> (a) An owner or operator who is liable under [MCL 324.20126] for injunctive relief necessary to prevent irreparable harm to the public health, safety, or welfare, or the environment from a release or threatened release in relation to that facility.

\* \* \*

(3) An action shall not be filed under subsection (1)(a) or (b) unless all of the following conditions exist:

(a) The plaintiff has given at least 60 days' notice in writing of the plaintiff's intent to sue, the basis for the suit, and the relief to be requested to each of the following:

(*i*) The department [MDEQ].

(*ii*) The attorney general.

(*iii*) The proposed defendants.

(b) The state has not commenced and is not diligently prosecuting an action under this part or under other appropriate legal authority to obtain injunctive relief concerning the facility or to require compliance with this part or a rule or an order under this part.

This statute, known as the "citizens suit" provision of part 201, *Cairns*, 275 Mich App at 114, clearly governs only those lawsuits brought by a "person, including a local unit of government on behalf of its citizens, whose health or enjoyment of the environment is or may be adversely affected by a release from a facility or threat of release from a facility . . . ." Moreover, the lawsuits governed by this statute are specified as those against an owner or operator for injunctive relief. Plaintiffs have not brought suit in the position of citizens whose health or enjoyment of the environment may be adversely affected by the contamination at issue. Instead, their lawsuit finds its genesis in the parties' contract and is based on fraud and statutory violations. Plaintiffs sought rescission of the contract as well as damages—not injunctive relief.[1] Clearly, then, MCL 324.20135 is inapplicable in this matter.

Next, defendant contends that summary disposition was appropriate in his favor because the statute of

---

[1] While plaintiffs did initially seek injunctive relief, the injunction sought was to enjoin enforcement of the lease.

frauds bars plaintiffs' claims and there is no genuine issue of material fact. The entirety of defendant's argument on this issue consists of this single, one-sentence bare assertion, supported by no law or fact. Again, a party may not simply announce a position or assert an error on appeal and leave it to this Court to discover and rationalize the basis for his or her claims. *Kelly*, 231 Mich App at 640-641.

Finally, defendant claims that summary disposition should have been entered in his favor on plaintiffs' fraud claims because plaintiffs did not reasonably rely on any alleged written or oral misrepresentation. According to defendant, because plaintiffs had the means to discover all the information about the contamination and suffered no damages as the result of any alleged misrepresentation, their fraud claims necessarily fail. We disagree.

To establish actionable fraud, a plaintiff must show that (1) the defendant made a material representation, (2) the representation was false, (3) the defendant knew the representation was false or recklessly made the representation as a positive assertion without knowledge of its truth, (4) the defendant made the representation with the intention that the plaintiff act on it, (5) the plaintiff acted in reliance on the representation, and (6) the plaintiff suffered injury. *Johnson v Wausau Ins Co*, 283 Mich App 636, 643; 769 NW2d 755 (2009). Additionally, "[s]uppression of facts and truths can constitute silent fraud where the circumstances are such that there exists a legal or equitable duty to disclose." *Mable Cleary Trust v Edward-Marlah Muzyl Trust*, 262 Mich App 485, 500; 686 NW2d 770 (2004). Importantly, to sustain a claim of fraud, the plaintiff must have reasonably relied on the false representation. *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464;

517 NW2d 235 (1994). "There can be no fraud where a person has the means to determine that a representation is not true." *Id.*

In this case, defendant identifies several provisions within the parties' contract that expressly mentioned contamination, asserting that such references essentially placed plaintiffs on notice of existing contamination. Specifically, defendant cites ¶ (8) of the contract, which provided that the tenant would not be liable for any acts or omissions of the landlord for his failure to comply with laws, orders, regulations, or ordinances, including soil-contamination requirements. The paragraph further provided that

> [i]n the event the Landlord's obligations as to pre-existing contamination on the property are expanded as a result of future changes in environmental laws and/or regulations by any governmental agency, it is agreed that Landlord's obligations as to the pre-existing contamination on the property will include Landlord's obligation to comply with those new governmental laws and regulations at Landlord's sole expense.

Defendant also cites ¶ (14) of the lease, which provided that if any upgrade work was required for the underground-storage tanks, the landlord would be solely responsible for making and paying for those upgrade activities. Defendant further notes ¶ (33), which states:

> [I]n the event any government agency requires cleanup of environmental contamination which exists on the property at the time of this Lease Agreement which is the Landlord's responsibility and the Landlord fails or refuses to pay for the required cleanup and the Tenant is obligated to pay for the cleanup which is the Landlord's responsibility, Landlord and Landlord's other property or any partners shall be subject to levy or execution as a result of

tenant's obligation to pay for the cleanup that is the obligation of Landlord to pay.

Defendant also agreed, in ¶ (35) of the lease, that he would indemnify plaintiffs and hold them harmless from any liability and expenses for preexisting contamination. Defendant contends that no fraud can lie given that plaintiffs had notice, through the contractual language cited, that the site was contaminated and when plaintiffs otherwise had the means to discover whether any representation regarding the contamination was true. Given the numerous references to preexisting contamination, the contract could be viewed as putting plaintiffs on notice of preexisting contamination. Further, because plaintiffs discovered that the site was contaminated by contacting the MDEQ mere months after the lease was executed, it might be reasonably argued that plaintiffs could have discovered this information before entering into the lease.

However, defendant undisputedly had *actual* knowledge of existing contamination and did not unequivocally advise plaintiffs of this fact in a writing that disclosed the general nature and extent of the contamination as required by MCL 324.20116(1). As stated in *M & D, Inc v McConkey*, 231 Mich App 22, 25; 585 NW2d 33 (1998), "A misrepresentation need not necessarily be words alone, but can be shown where the party, if duty-bound to disclose, intentionally suppresses material facts to create a false impression to the other party." Whether defendant intentionally failed to advise plaintiffs of the known contamination was a question of fact for the jury, as was whether the contract itself reasonably placed plaintiffs on notice that the site was contaminated. Because defendant had a statutory duty to disclose to plaintiffs the fact that the site had been found to be contaminated before transferring any interest in the subject property to them, and

did not do so, and because questions of fact existed regarding the fraud claims, the fraud claims properly withstood summary disposition.

Moreover, the fraud issue was submitted to a jury, which found that defendant had, in fact, engaged in fraud and thus awarded plaintiffs damages on the fraud claims. Because defendant did not appeal the jury verdict itself, any error by the trial court in denying defendant's motion for partial summary disposition on plaintiffs' fraud claims would be irrelevant because no matter what this Court's ruling on the summary disposition issue, the jury verdict would still stand.

With respect to defendant's argument concerning plaintiffs' damages, we would note that defendant asserts that no damages were suffered because plaintiffs did not pay any MDEQ response costs. Plaintiffs have never claimed that they paid MDEQ cleanup costs. Instead, plaintiffs asserted in their complaint that the damages they suffered as a result of defendant's fraud were the over $200,000 they invested in the property, and the facing of *potential* liability for environmental cleanup costs. Defendant's assertion regarding damages, then, is misplaced.

Affirmed. Plaintiffs, as the prevailing parties, may tax costs.