*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TYLER JAMES FULLER,

UNPUBLISHED
August 10, 2023

Plaintiff-Appellee,

v

No. 364197
Montcalm Circuit Court

MAKENNA EMILY FULLER,

LC No. 2018-024740-DM

Defendant-Appellant.

Before: YATES, P.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

Defendant, Makenna Emily Fuller, appeals by delayed leave granted[1] the trial court's order denying her motion to change physical custody of the parties' minor children and removing the provision in the judgment of divorce requiring the custodial parent to look to the noncustodial parent first when childcare was required. On appeal, Makenna challenges (1) the trial court's finding that an established custodial environment existed with plaintiff, Tyler James Fuller, (2) the trial court's best interest findings, (3) the trial court's decision to maintain joint physical and legal custody, and (4) the trial court's decision to allow Tyler to call additional witnesses to testify at the de novo hearing, but Makenna was not permitted to call additional witnesses. We affirm.

## I. BACKGROUND

This case arises out of the parties' child custody dispute following their divorce. The parties had two children during their marriage: EF and BF. The trial court entered the consent judgment of divorce in August 2019. According to the judgment of divorce, the parties were awarded joint legal and joint physical custody of the children. Initially, there was a temporary parenting-time schedule in which Tyler had the children from Thursday at 5:00 p.m. until Sunday at 5:00 p.m. on Week 1, and Thursday at 5:00 p.m. until Saturday at 11 a.m. on Week 2. Makenna had physical custody of the children at all other times. That arrangement was scheduled to

---

[1] *Fuller v Fuller*, unpublished order of the Court of Appeals, entered February 17, 2023 (Docket No. 364197).

continue until Makenna graduated from nursing school or October 15, 2019, whichever occurred earlier. Thereafter, the parties would have custody of the children on an alternating weekly schedule from Sunday at 6:00 p.m. until the following Sunday at 6:00 p.m. The party whose week was beginning would provide transportation.

The judgment of divorce further contained a provision regarding childcare, which provided that "[t]he parent with custody shall look to the non-custodial parent first, in all cases where daycare is required." The parties and the trial court referred to this provision as "the right of first refusal." Makenna moved to enforce the judgment of divorce, arguing that Tyler failed to disclose his work schedule so that she was unable to exercise her right of first refusal to care for the children while he was working. Following a referee hearing, the referee recommended that the motion be granted. Tyler was ordered to disclose his work schedule to Makenna before his parenting time. In addition, the referee recommended that both parties be required to disclose any third-party caretakers for the children 48 hours before use of said caretaker and offer the other party the opportunity to provide care for the children instead. The circuit court signed the recommendation into an order.

Makenna then moved for a change of custody and parenting time. In the motion, she argued that Tyler had become domestically abusive and uncooperative to the point that the children's schooling and health had been affected. As a result, Makenna opined it was necessary for the trial court to award one of the parents sole physical custody. Tyler opposed the motion. He also moved to amend the right of first refusal to clarify that it only applied when the custodial parent would otherwise need to engage the services of a paid childcare provider. He contended that the majority of the parties' arguments were caused by the right of first refusal.

A referee conducted a hearing in which an investigator from the Friend of the Court and the parties testified. The referee ultimately recommended that Makenna be awarded primary physical custody of the children, that the parties continue to share joint legal custody, and that the right of first refusal be removed from the judgment of divorce. The referee concluded that the established custodial environment existed solely with Makenna, in part because of the right of first refusal. The referee further determined that Makenna's proposed change of custody would not alter the established custodial environment and that she had shown that the change of custody was in the children's best interests by a preponderance of the evidence.

Tyler filed an objection to the recommendation, a request for de novo review, and a motion to supplement the record. Tyler argued that he was prohibited from presenting all of his evidence at the hearing because the referee, in the interest of completing the hearing in a single day, did not allow him to present the testimonies of additional witnesses. The trial court granted Tyler's request in part by allowing him to present the two witnesses who were available to testify at the referee hearing but could not testify because of time constraints imposed by the referee.

Following the de novo hearing, the trial court denied Makenna's motion to change physical custody. The court found that an established custodial environment existed with both parties, that the change in custody would alter the established custodial environment, and that Makenna failed to show that the change was in the children's best interests by clear and convincing evidence. This appeal followed.

## II. ANALYSIS

## A. STANDARDS OF REVIEW

"All custody orders must be affirmed on appeal unless the trial court committed a palpable abuse of discretion, made findings against the great weight of the evidence, or made a clear legal error." *Bofysil v Bofysil*, 332 Mich App 232, 242; 956 NW2d 544 (2020) (cleaned up). "The great weight of the evidence standard applies to all findings of fact. A trial court's findings . . . should be affirmed unless the evidence clearly preponderates in the opposite direction." *Id*. (cleaned up; ellipsis in original). "[T]he abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions." *Id*. (cleaned up). "[T]his Court reviews questions of law for clear legal error." *Id*. (cleaned up). "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (cleaned up).

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Reed v Reed*, 265 Mich App 131, 160; 693 NW2d 825 (2005). This Court reviews the interpretation of statutes and court rules de novo. *Donkers v Kovach*, 277 Mich App 366, 369; 745 NW2d 154 (2007).

## B. ESTABLISHED CUSTODIAL ENVIRONMENT

Makenna first argues that the trial court erred by concluding that an established custodial environment existed with both parties. Specifically, she asserts that an established custodial environment did not exist with Tyler. We disagree.

MCL 722.27 concerns the trial court's powers in a child custody dispute. In pertinent part, MCL 722.27(1)(c) provides that "[t]he court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child."

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c).]

Moreover, this Court has explained that "[a]n established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child." *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008). "It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence." *Id*. "A custodial environment can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order." *Id*. at 707. "An established custodial environment may exist with both parents where a child looks to both the mother and the father for guidance, discipline, the necessities of life, and parental comfort." *Id*. Determining whether a child has an established custodial environment with one or both parents "is an intense factual inquiry." *Bofysil*, 332 Mich App at 242 (cleaned up).

In this case, the trial court determined that an established custodial environment existed with both parents. The trial court acknowledged that as a result of the parties' agreement, Makenna facilitated EF's virtual schooling during the pandemic while Tyler worked outside of the home. But the court found that the children spent their afternoons, evenings, and weekends with Tyler during his parenting time. The court also observed that pursuant to *Bofysil*, 322 Mich App at 244, it could not consider the fact that Tyler worked outside of the home as a basis to make an established custodial environment determination one way or the other.

A careful review of the record supports the conclusion an established custodial environment existed with both parents. It is undisputed that the children had an established custodial environment with Makenna. But there was also testimony that Tyler provided for all of the children's needs while they were in his care and that they looked to him for guidance, discipline, and parental comfort. While the children were in Tyler's care, they attended church together, went camping together, visited extended family together, and participated in various activities together. Prior to the COVID-19 pandemic, Makenna provided care to the children in the mornings before school because Tyler's shift started at 6:00 a.m. And Makenna picked BF up from school at 1:15 p.m. because Tyler's shift ended at 2:30 p.m. But Tyler picked up EF directly from school and picked up BF from Makenna at approximately 3:00 p.m. during his parenting time. Indeed, the parties agreed that EF would attend virtual school in 2020 and Makenna quit her job to supervise EF's schooling. But this arrangement did not change the established custodial environment with Tyler during non-school hours. The evidence reflects that the children had a homelife in which both parents provided for their care and needs. Although the parents may have fulfilled different needs for the children, both provided the children with "security, stability, and permanence." We are not persuaded that the evidence clearly preponderated against the trial court's finding that EF and BF had an established custodial environment with both parents.

## C. RIGHT OF FIRST REFUSAL

Makenna next asserts that the trial court's termination of the right of first refusal altered the established custodial environment with her so that the court was required to determine that such an alteration was in the children's best interests by clear and convincing evidence. Because Makenna did not object to the referee's recommendation that the right of first refusal be removed from the judgment of divorce,[2] or raise this argument before the trial court, this issue is not preserved and our review "is limited to determining whether a plain error occurred that affected

---

[2] MCR 3.215(E)(4) provides:

> A party may obtain a judicial hearing on any matter that has been the subject of a referee hearing and that resulted in a statement of findings and a recommended order by filing a written objection and notice of hearing within 21 days after the referee's recommendation for an order is served on the attorneys for the parties, or the parties if they are not represented by counsel.

substantial rights." See *Rivette v Rose-Molina*, 278 Mich App 327, 328-329; 750 NW2d 603 (2008).[3]

Even with the removal of the right of first refusal, the rest of the custody agreement remains the same. The parties share physical custody of the children with parenting time on alternating weeks, and the parties are responsible for obtaining childcare during their parenting time. Moreover, the circumstances involving the children have changed. At the time of the de novo hearing, Makenna had the children on weekday mornings before school. Tyler picked up EF directly from school after work, while Makenna cared for BF in the afternoon after he got out of school at 1:15 p.m. The record reflects that BF would have the same school schedule as EF in the fall of 2022 and thus Tyler would pick up both children directly from school after work. Even if the right of first refusal was still in effect, Makena's additional time would be limited to weekday mornings—with the children being asleep for at least some of that time—and days that the children do not have school. The loss of such time does not result in a change to the established custodial environment, considering that Makenna continues to have shared physical custody with parenting time every other week. Makenna has not shown that the removal of the right of first refusal from the judgment of divorce constituted plain error affecting her substantial rights. See *Rivette*, 278 Mich App at 328.

## D. BEST INTERESTS FACTORS

Makenna further asserts that the trial court abused its discretion or relied on findings against the great weight of the evidence by finding that several of the best-interest factors equally favored both parties, and by determining that, on the whole, it was in the children's best interests for the parties to share joint legal and physical custody. We disagree.

"[C]ustody disputes are to be resolved in the child's best interests, and [g]enerally, a trial court determines the best interests of the child by weighing the twelve statutory factors outlined in MCL 722.23." *Demski v Petlick*, 309 Mich App 309 Mich App 404, 446; 873 NW2d 596 (2015), lv den 498 Mich 880 (2015) (cleaned up; alterations in original). MCL 722.23 contains the following factors:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

---

[3] "To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Rivette*, 278 Mich App at 328-329 (cleaned up).

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

"In addition, the court must consider the general level of cooperation and agreement between the parties when considering joint custody." *Dailey v Kloenhamer*, 291 Mich App 660, 667; 811 NW2d 501 (2011) (cleaned up). "When ruling on a custody motion, the circuit court must expressly evaluate each best-interest factor and state its reasons for granting or denying the custody request on the record." *Id*. Because the children had "an established custodial environment with both parents, neither parent's custody may be disrupted absent clear and convincing evidence that the change is in the child[ren]'s best interests." *Bofysil*, 332 Mich App at 243.

In this case, the trial court made specific findings as to each factor and mostly agreed with the referee's conclusions.[4] A trial court may affirm a referee's custody recommendation without making any independent findings concerning the children's best interests as long as the

---

[4] Even if the court's treatment of some factors was brief, those factors were not in serious dispute.

recommendation considered the best-interest factors. *Rivette*, 278 Mich App at 330. "[T]he trial court has discretion to accord differing weight to the best-interest factors." *Berger*, 277 Mich App at 705.

Makenna challenges the trial court's findings as to Factors (c), (j), and (k). But we conclude that the trial court's findings were not against the great weight of the evidence. See *Bofysil*, 332 Mich App at 242.

Factor (c) is the capacity and disposition of the parties involved to provide the child with food, clothing, medical care, or other remedial care. The referee and the court both concluded that this factor favored both parties equally. This conclusion was supported by the testimony. Both parties provided for the children's basic needs while the children were in their care. Tyler worked full-time and contributed to the children's support monetarily. He also provided the children's health insurance. Makenna handled the children's doctor appointments; however, the court observed that she had more flexibility to schedule the children's appointments because she did not work. We find that the trial court's conclusion that this factor favored both parties equally was not against the great weight of the evidence.

As for Factor (j), the ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, the referee and the trial court determined that neither party was favored under this factor. The parties admitted that they did not get along. Makenna testified that she attempted to communicate respectfully with Tyler, but that respect was not returned. On the other hand, Tyler testified that Makenna was abusive to him over the phone, which prompted him to respond by insulting her via text message. It appears that both parties threatened to call the police and their respective lawyers during their disagreements concerning parenting-time exchanges. Makenna told the children to call Tyler "Daddy Tyler" and her new husband "Daddy Kellie." The friend-of-the-court investigator and the referee believed that this behavior was inappropriate. Considering the evidence presented at the referee hearing, we find that the trial court's conclusion that this factor did not favor either party was not against the great weight of the evidence.

Factor (k) concerns domestic violence. The referee and the trial court found that this factor favored both parties equally. Makenna presented text messages in which Tyler called her names. But there was no other evidence concerning domestic violence. The referee concluded that, without more, she could not definitely conclude that there was domestic violence, while acknowledging that domestic violence does not require a physical altercation. The trial court observed that the record showed that the parties used unkind and inappropriate words with each other; however, there was nothing in the record suggesting a physical domestic-violence relationship. The trial court ultimately determined that the disrespectful text messages were not enough to constitute domestic violence.[5] We find that the conclusion that Factor (k) favored both parties equally was not against the great weight of the evidence.

---

[5] The court ordered that the parties use a phone application to communicate with each other to improve their communication. The court explained that if the behavior continued or escalated, one of the parties could file a motion and the court would put further procedures in place.

Makenna has not shown that the trial court erred as to its findings concerning the best-interest factors. The trial court concluded that the parties were essentially equal and that there was no clear and convincing evidence to justify altering the established custodial environment. In light of the deferential standard of review that applies and the presumption, under MCL 722.27a(1), that it is in the children's best interests "to have a strong relationship with both . . . parents," we cannot conclude that the trial court abused its discretion or relied on findings against the great weight of the evidence by denying Makenna's motion to change custody.

## E.  LEGAL CUSTODY

Makenna also argues that the trial court erred in maintaining joint legal custody. We disagree.

Pursuant to MCL 722.26a(1)(b), in determining whether joint legal custody is in the best interests of the child, the court must consider "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." When parents are unable to cooperate and make joint decisions, a trial court may be required to grant sole custody to one parent:

> In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision making authority and discipline—and they must be willing to cooperate with each other in joint decision making. If two equally capable parents whose marriage relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children. [*Fisher v Fisher*, 118 Mich App 227, 232-233; 324 NW2d 582 (1982) (citations omitted).]

In this case, there was testimony that the parties came to agreements concerning major life choices for the children. For example, the parties agreed that Makenna would stay home and facilitate EF's virtual schooling during the pandemic. The investigator testified during that referee hearing that there was no reason to give either party sole legal custody. The investigator opined that the parties were capable of asking for help from the court if they were unable to make important decisions. Many of the parties' disagreements concerned the times and locations of exchanges and the right of first refusal, but that was removed from the judgment of divorce. And the court ordered that the parties use a phone application to communicate with each other to improve their communication.

The parents' ability to cooperate is only one factor for a trial court to consider in determining whether to grant or deny a request for joint custody. *Shulick v Richards*, 273 Mich App 320, 326; 729 NW2d 533 (2006). The trial court must also consider the best-interest factors. *Id.* As previously discussed, the trial court's findings concerning the best-interest factors in MCL 722.23 were not against the great weight of the evidence. Accordingly, there is no basis for us to conclude that the trial court abused its discretion by maintaining joint legal custody.

## F. ADDITIONAL WITNESS TESTIMONY

Finally, Makenna argues that the trial court erred by allowing Tyler to present the testimonies of additional witnesses, while not allowing her to do the same. We disagree.

MCL 552.507 concerns de novo hearings of matter heard before a referee in a child custody dispute. MCL 552.507(4) provides:

> The court shall hold a de novo hearing on any matter that has been the subject of a referee hearing, upon the written request of either party or upon motion of the court. The request of a party shall be made within 21 days after the recommendation of the referee is made available to that party.

Moreover, MCL 552.507(5) explains:

> A hearing is de novo despite the court's imposition of reasonable restrictions and conditions to conserve the resources of the parties and the court if the following conditions are met:
>
> (a) The parties have been given a full opportunity to present and preserve important evidence at the referee hearing.
>
> (b) For findings of fact to which the parties have objected, the parties are afforded a new opportunity to offer the same evidence to the court as was presented to the referee and to supplement that evidence with evidence that could not have been presented to the referee.

MCR 3.215(F)(2) states:

> To the extent allowed by law, the court may conduct the judicial hearing by review of the record of the referee hearing, but the court must allow the parties to present live evidence at the judicial hearing. The court may, in its discretion:
>
> (a) prohibit a party from presenting evidence on findings of fact to which no objection was filed;
>
> (b) determine that the referee's finding was conclusive as to a fact to which no objection was filed;
>
> (c) prohibit a party from introducing new evidence or calling new witnesses unless there is an adequate showing that the evidence was not available at the referee hearing;
>
> (d) impose any other reasonable restrictions and conditions to conserve the resources of the parties and the court.

In this case, the witnesses in question were present and available to testify at the referee hearing; however, the referee declined to allow the parties to present any additional witnesses because she wanted to finish the hearing in one day. As a result, Tyler was unable to present important evidence at the referee hearing. Tyler moved to supplement, asking to present the testimonies of additional witnesses because he was unable to present all of his evidence on the record. The trial court granted the request, in part, by allowing him to present the two witnesses who were available to testify at the referee hearing but could not testify because of time constraints imposed by the referee. The court's decision was not the result of an abuse of discretion. MCR 3.215(F)(2) requires that the court allow the parties to present live evidence at the de novo hearing. And for a finding of fact to which a party has objected, the court must afford the party "to supplement that evidence with evidence that could not have been presented to the referee." MCL 552.507(5)(a).

Makenna additionally argues that the trial court erred by allowing the testimony because the witnesses would have known about the evidence presented at the referee hearing and could alter their testimonies to be more favorable to Tyler. First, the transcript from the referee hearing shows that both witnesses were sequestered at the beginning of the hearing. Second, the trial court was aware of this possibility, and both witnesses were available for cross-examination. This Court will not interfere with the court's role—as the trier of fact—to determine the weight of the evidence and the credibility of the witnesses. *People v Passage*, 277 Mich App 175, 177; 743 NW2d 746 (2007).

To the extent that Makenna asserts that the trial court erred by not allowing her to present additional witnesses, she never requested the opportunity to introduce any additional witnesses. The trial court did not abuse its discretion by declining to grant a request that was never made. See MCR 3.215(F)(2)(c). Makenna did not bring any other witnesses to testify at the referee hearing. Her counsel stated that he wanted to call Tyler's ex-girlfriend to testify, but she was unavailable because one of her parents had just suffered a stroke. Makenna never made any requests to present this witness or any others at the de novo hearing. Moreover, Makenna does not identify the witnesses she wished to present or explain the testimonies that those witnesses would provide. See *1031 Lapeer LLC v Rice*, 290 Mich App 225, 233-234; 810 NW2d 293 (2010) (stating that an appellant may not "simply announce a position or assert an error and then leave it to this Court to discover and rationalize the basis for the appellant's claims, unravel and elaborate upon the arguments, and search for authority to support his or her position"). More importantly, Makenna has not shown that the presentation of any of these witnesses would have resulted in a different outcome in the case. See *Reed*, 265 Mich App at 160 (stating that even if a trial court errs by excluding evidence, reversal is only warranted "if a substantial right of a party is affected and it affirmatively appears that failing to grant relief would be inconsistent with substantial justice").

Affirmed.

/s/ Christopher P. Yates
/s/ Stephen L. Borrello
/s/ Sima G. Patel