*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF CHARLA BROWN,

Petitioner-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

Respondent-Appellant.

FOR PUBLICATION
March 26, 2026
3:18 PM

No. 368825
Ingham Circuit Court
LC No. 22-000723-AA

Before: KOROBKIN, P.J., and YATES and FEENEY, JJ.

FEENEY, J.

In this Medicaid administrative action, respondent-appellant, the Department of Health and Human Services (DHHS), appeals by leave granted[1] the circuit court order reversing the decision of an administrative law judge (ALJ) to uphold the DHHS's imposition of a divestment penalty on medical benefits of the decedent, Charla Brown. We affirm the circuit court's conclusion that the personal-care and homecare contract requirements in DHHS's *Bridges Eligibility Manual 405*, BPB 2021-013 (April 1, 2021) (*BEM 405*),[2] are inconsistent with federal law because they create an irrebuttable presumption resulting in a divestment penalty. We vacate the circuit court's reversal of the ALJ's decision to uphold the imposition of a divestment penalty, and we remand for the ALJ to reevaluate divestment under the proper legal framework.

## I. FACTS

---

[1] *Estate of Charla Brown v Dep't of Health & Human Servs*, unpublished order of the Court of Appeals, entered June 12, 2024 (Docket No. 368825).

[2] *BEM 405* has been slightly updated since the decedent applied for benefits, see Michigan Department of Health and Human Services, *Bridges Eligibility Manual 405*, BPB 2026-002 (January 1, 2026), but we cite to the 2021 version of *BEM 405* that was in effect at the time of the decedent's application.

In March 2019, the decedent had triple bypass surgery and was hospitalized for almost two months before being admitted to a nursing home. In July 2019, the decedent chose to return home—against the nursing home's recommendation—where she was cared for by her husband, Harold Brown, her daughter, Lynette Brown, and a family friend, Loreen Hills. Two years later, in July 2021, the decedent was again admitted to a nursing home.

Harold testified that when the decedent was home, she was very weak and could not walk, so her caregivers had to assist her in and out of a wheelchair and provide "[a]ll of her personal care [including] continence problems, bathing problems, even dressing her and taking care of her medication, cookin[g] her meals and feedin[g] her." During the two years that the decedent was living at home with help—pursuant to oral agreements—Harold and the decedent paid Lynette a total of $45,758.64, and Hills a total of $10,668.75. They paid the caregivers regularly, including payments in July and August 2021, immediately after the decedent was admitted to the nursing home, totaling $7,000 to Lynette and $800 to Hills.

According to Harold's, Lynette's, and Hills's affidavits: Hills provided care daily from 9:30 to 10:30 a.m., Lynette provided care daily from noon to 9:00 p.m., and Hills performed additional household chores and maintenance services in the afternoons. Harold and Hills averred that Hills was initially paid $15 per hour, but in April 2020, her payments were increased to $20 per hour. Harold and Lynette averred that Lynette was paid $1,000 per month; however, Lynette was paid extra during the four months that Harold and the decedent both needed care—$2,000 for July 2019 and March 2020, and $3,000 for July 2020 and October 2020.

In July 2021, around the time that the decedent was again admitted to a nursing facility, Harold met with an elder-law attorney, and, according to their affidavits, Harold, Lynette, and Hills first learned of the DHHS's Medicaid policy requiring written and notarized personal-care contracts. In August 2021, the decedent's physician provided a letter stating, in pertinent part, as follows:

> Since approximately June 2019, [the decedent] has required assistance with virtually all activities of daily living including personal care, mobility, transportation, continence care, bathing, dressing, laundry, medication management, food preparation, feeding, and housekeeping in order to maintain a safe and healthy living space. But for the provision of such assistance, she would require a Skilled Nursing Facility . . . otherwise known as a "nursing home."

Thereafter, in September 2021, Lynette and the decedent entered into a written agreement for personal-care services, specifying tasks and duties for Lynette and establishing a rate of compensation at $11.55 for 20 hours per week, for a total of $1,000 per month. The agreement stated that it was to be binding on the parties for services that began on June 1, 2019. A few days after the personal-care written agreement was executed, the decedent applied for Michigan's Medicaid Assistance for Long-Term Care (MA-LTC) benefits.

In November 2021, the DHHS issued a determination notice regarding the decedent's eligibility for MA-LTC, stating that the decedent was eligible after a penalty period from September 1, 2021 to February 20, 2022. The DHHS explained that this penalty period was assessed "because you or your spouse transferred assets or income for less than their fair market

value in the amount of $54,427.39." In support of its decision, the DHHS cited *BEM 405*, regarding divestments. Notably, *BEM 405*, p 8, states that "Personal Care and Home Care contracts/agreements shall be considered a transfer for less than fair market value unless the agreement meets all of the following [requirements,]" including: (1) a notarized written contract, executed before the commencement of the services; and (2) a written recommendation received from the applicant's physician before the services begin stating that the services are necessary.

The decedent requested a hearing before an ALJ, but by the time that the ALJ hearing occurred, the decedent had passed away. Before the ALJ, petitioner-appellee, the Estate of Charla Brown, asserted that the *BEM 405* personal-care contract policy did not comport with federal and state contract and Medicaid law because it created an irrebuttable presumption of divestment based on the agreement's form instead of reviewing whether the transfer was for: (1) greater than fair market value, or (2) purposes other than Medicaid qualification. In June 2022, the ALJ issued a decision and order affirming DHHS's imposition of a divestment penalty period. The ALJ acknowledged that petitioner "had a persuasive argument that the Petitioner was not trying to qualify for [Medicaid] but was trying to avoid a residential placement." But the ALJ ultimately ruled in favor of DHHS, reasoning, in part, as follows:

> Department policy in BEM 405 requires a written person[al] care contract before services are provided or they are deemed to [be] provided for free by relatives or divestment if services provided [were] paid for. The contract with the Petitioner's husband and his daughter was signed . . . after services were provided . . . . There was no written contract with Ms. [Hills] as required by Department policy in BEM 405. In addition, the Petitioner has to be in the home and not in a rehab facility or nursing home in order for payment of personal care services. Lastly, a treating physician has to write a letter stating that personal care services were recommended or required to keep the Petitioner in the home and out of residential care or nursing facility before services were provided. The Petitioner's treating physician did not sign a letter recommending personal care services until August 26, 2021, but personal care services were provided from May 2019.

Petitioner moved for reconsideration, which the ALJ denied.

Petitioner then appealed to the circuit court, conceding that the decedent's care agreements did not meet the requirements of *BEM 405*'s personal-care contract policy, but arguing that *BEM 405*'s personal-care contract policy was unlawful as written because it created an irrebuttable presumption of divestment that conflicted with federal Medicaid law. The circuit court agreed with petitioner and reversed the ALJ's decision, finding that:

> The Michigan Medicaid policy found in [BEM] Item 405 on page 8 stating that "Personal Care and Home Care contracts/agreements shall be considered a transfer for less than fair market value unless the agreement meets all of the following: . . ." is unlawful because of noncompliance with governing federal law.

The circuit court reasoned as follows:

Well, I want to begin [with] my concern that there is . . . no support on the record for the BEM contract [policy's] being promulgated as a rule. And yet as I read the [ALJ's] ruling, which is after all what's in front of me . . . that's the reason that divestment was found. Pure and simple. It makes it real easy. It wasn't in writing . . . [and] there's rules about what has to be in writing. Counsel argued the state doesn't monitor these situations, really suggesting that this was . . . a sham. Well, I don't see that in the record. . . .

And I think [the] fundamental argument that the Appellant made, that this is actually antithetical to the purposes of the federal Medicare (sic) program. It's adding undue burdens.

And if people are going to be trying to subvert the Medicare [sic] program by sleazy tricks, they can do it. They can make up contracts all the time. I don't think that happened here. There is nothing on the record suggesting that. It's pure speculation.

And if there was a contract, and it was not notarized, that wouldn't prove that's how it was done. There was testimony given, and it wasn't for fair market value. . . . [A]t least the only evidence on the record was [that i]t was less than fair market value being paid for the services that were even then ruled as divestment.

I find this is error, it's an error of law . . . .

The DHHS moved for reconsideration, which the circuit court denied.

The DHHS now appeals. The Elder Law and Disability Rights Section of the State Bar of Michigan and the Michigan Chapter of the National Academy of Elder Law Attorneys have submitted an amicus curiae brief in this matter.

## II. *BEM 405*

On appeal, the DHHS argues that because the decedent's written personal-care agreement did not comport with *BEM 405*'s personal-care contract policy, the decedent's payments to Lynette and Hills constituted divestments; accordingly, the circuit court erred by reversing the ALJ's decision and removing the DHHS's imposition of a divestment penalty period. We disagree and conclude that because federal Medicaid law requires the DHHS to consider evidence of a transfer made for a purpose other than qualification for Medicaid when assessing a divestment penalty, the application of *BEM 405*'s personal-care contract policy is not authorized by federal law, and the circuit court properly reversed respondant's determination.

### A. PRESERVATION AND STANDARD OF REVIEW

Because this issue was raised in the circuit court, it is preserved for appellate review. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020).

-4-

"A final agency decision is subject to court review but it must generally be upheld if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material and substantial evidence on the whole record." *ER Drugs v Dep't of Health & Human Servs*, 341 Mich App 133, 144; 988 NW2d 826 (2022) (quotation marks and citation omitted). When reviewing a trial court's review of an agency action, "we must determine whether the trial court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's findings." *Polania v State Employees' Retirement Sys*, 299 Mich App 322, 328; 830 NW2d 773 (2013). "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *ER Drugs*, 341 Mich App at 144-145 (quotation marks and citation omitted). "If there is sufficient evidence, the circuit court may not substitute its judgment for that of the agency, even if the court might have reached a different result." *Id*. at 145 (quotation marks and citation omitted). "Judicial review of an administrative agency's decision regarding a matter of law is limited to determining whether the decision was authorized by law." *Mericka v Dep't of Community Health*, 283 Mich App 29, 35; 770 NW2d 24 (2009).

We review de novo whether the lower court properly interpreted and applied the relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). The interpretation of agency regulations is also a question of law that we review de novo. *American Civil Liberties Union of Mich v Calhoun Co Sheriff's Office*, 509 Mich 1, 8; 983 NW2d 300 (2022).

## B. ANALYSIS

Although the DHHS attempts to frame this issue as one of construction regarding *BEM 405*'s personal-care contract policy, whether the applicable federal and state statutes authorized the DHHS to institute such a policy at all was the basis of the circuit court's decision. Accordingly, the issue calls for analysis of those statutes—42 USC 1396a, 42 USC 1396p,[3] and MCL 400.6.[4]

Article 6, § 28, of Michigan's 1963 Constitution states:

---

[3] *BEM 405*, p 23, states that the legal bases for its divestment policy are §§ 1902(a)(18) and 1917 of the Social Security Act, which are codified at 42 USC 1396a(a)(18) and 42 USC 1396p, respectively.

[4] As an initial matter, the DHHS asserts that in *Jensen v Dep't of Human Servs*, unpublished per curiam opinion of the Court of Appeals, issued February 19, 2015 (Docket No. 319098), this Court already upheld the validity of *BEM 405*'s personal-care contract policy by finding that the petitioner accurately applied the policy and that the payment at issue constituted a divestment under it. Although we can consider unpublished opinions for their instructive or persuasive value, *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017), we do not find *Jensen* instructive or persuasive in this case because the plaintiff in *Jensen* did not challenge the personal-care contract policy on the basis that it violated federal law by creating an irrebuttable presumption that any payment for personal-care services made without a policy-compliant contract was a transfer for less than fair market value; moreover, the plaintiff did not challenge the applicability of the "for another purpose" exception found in *BEM 405*, p 11, and 42 USC 1396p(c)(2)(C)(*ii*).

All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

"An agency decision is not authorized by law if it violates constitutional or statutory provisions, lies beyond the agency's jurisdiction, follows from unlawful procedures resulting in material prejudice, or is arbitrary and capricious." *Dearborn Hts Pharmacy v Dep't of Health & Human Servs*, 338 Mich App 555, 559; 980 NW2d 736 (2021) (quotation marks and citation omitted).

The Michigan Supreme Court has described the Medicaid program as follows:

The Medicaid program is governed by a complex web of interlocking statutes, as well as regulations and interpretive documents published by state and federal agencies. The program was created by Title XIX of the Social Security Act of 1965, PL 89-97; 79 Stat 343, codified at 42 USC 1396 *et seq*. Medicaid is generally a need-based assistance program for medical care that is funded and administered jointly by the federal government and individual states. [*Hegadorn v Dep't of Human Servs Dir*, 503 Mich 231, 245; 931 NW2d 571 (2019).]

Under Medicaid, the federal government reimburses the individual states for a portion of the medical care costs for individuals of limited means. *Cook v Dep't of Social Servs*, 225 Mich App 318, 320; 570 NW2d 684 (1997); see also *In re Rasmer Estate*, 501 Mich 18, 25; 903 NW2d 800 (2017). The individual states must develop plans for administering and applying the Medicaid program, but those plans must be consistent with federal Medicaid statutes. *Hegadorn*, 503 Mich at 246; see 42 USC 1396a. The failure to comply with federal Medicaid law and regulations may result in the state's loss of that federal funding. 42 CFR 430.30 (2025).

The United States Supreme Court has determined that, unless federal law specifically requires a single course, "leeway for state choices . . . is characteristic of the Medicaid statute, which is designed to advance cooperative federalism." *Wis Dep't of Health & Family Servs v Blumer*, 534 US 473, 476; 122 S Ct 962; 151 L Ed 2d 935 (2002). "Each participating State develops a plan containing reasonable standards . . . for determining eligibility for and the extent of medical assistance within boundaries set by the Medicaid statute and the Secretary of Health and Human Services." *Id.* at 479 (quotation marks and citation omitted); see 42 USC 1396a(a)(5) and (17). Specifically, "[a] State electing to assist the medically needy must determine eligibility under standards that are 'reasonable' and 'comparable for all groups.' " *Atkins v Rivera*, 477 US 154, 158; 106 S Ct 2456; 91 L Ed 2d 131 (1986), quoting 42 USC 1396a(a)(17).

To be eligible for Medicaid long-term-care benefits in Michigan, an individual must meet several criteria, including that the applicant's assets are below a certain threshold. *Mackey v Dep't of Human Servs*, 289 Mich App 688, 698; 808 NW2d 484 (2010). The burden of proof of eligibility for public benefits is always on the applicant. *Lavine v Milne*, 424 US 577, 583-584;

96 S Ct 1010; 47 L Ed 2d 249 (1976). "[A] Medicaid applicant eligible for long-term care benefits is subject to a divestment penalty if she transfers a resource during the five-year look-back period for less than fair market value and that resource is not otherwise excluded as a divestment." *Mackey*, 289 Mich App at 698-699; see 42 USC 1396p(c). The divestment penalty is assessed as a "period during which payment of long-term-care benefits is suspended." *Mackey*, 289 Mich App at 696.

DHHS issues Medicaid policy in the form of the *BEM* and the Michigan State Plan (MSP), or "State plan," as referenced in 42 USC 1396a and 42 USC 1396p. *Hegadorn*, 503 Mich at 250 (*BEM* policies "serve as a starting point" in evaluating eligibility for Medicaid); *Mackey*, 289 Mich App at 698. The MSP—which, unlike the *BEM*, must be submitted to the Centers for Medicare and Medicaid Services (CMS), the entity in charge of administering the federal Medicaid program, 42 CFR 430.10 and 42 USC 1396a(a)(18)—does not define "less than fair market value" or provide requirements for personal-care and homecare contracts that must be met to avoid divestment penalties. Conversely, the *BEM* defines "fair market value," *BEM 405*, pp 6-7, and discusses Medicaid "divestment" as follows:[5]

> Divestment is a type of transfer of a resource and not an amount of resources transferred.
>
> Divestment means the transfer of a resource . . . by a client or his spouse that are all the following:
>
> - Is within a specified time . . . .
>
> - Is a transfer for *less than fair market value* . . . .
>
> - Is not listed under *transfers that are not divestment* in this item. [*BEM 405*, p 1 (emphasis added).]

The *BEM 405*, pp 9-11, goes on to list "transfers that are not divestment," including "transfers for another purpose," such as "transfers exclusively for a purpose other than to qualify or remain eligible for [Medicaid assistance]."[6] Specifically at issue in this case is *BEM 405*'s personal-care contract policy, which states that "Personal Care and Home Care contracts/agreements shall be considered a transfer for less than fair market value unless the agreement meets all of the following [requirements,]" including: (1) a notarized written contract, executed before the commencement of the services; and (2) a written recommendation received from the applicant's physician before the services begin stating that the services are necessary. *BEM 405*, p 8.

Notably, under 42 CFR 435.601(b)(2), the United States Department of Health and Human Services requires state Medicaid agencies to use the "financial methodologies and requirements" of the Supplemental Security Income (SSI) program to determine the eligibility of aged individuals

---

[5] Compare 42 USC 1396p(c)(1)(A).

[6] Compare 42 USC 1396p(c)(2)(C)(*ii*).

who apply for Medicaid. See also 42 CFR 435.401(c)(2); 42 USC 1396a(r)(2)(A)(*i*). For the SSI program, 20 CFR 416.1246 addresses whether a transfer is a divestment by defining "fair market value" and explaining that a transfer "of a resource for less than fair market value is presumed to have been made for the purpose of establishing SSI or Medicaid eligibility *unless the individual (or eligible spouse) furnishes convincing evidence that the resource was transferred exclusively for some other reason*." 20 CFR 416.1246(b) and (e) (emphasis added). That SSI provision is devoid of personal-care contract requirements.

Although MCL 400.6 authorizes the DHHS to develop binding policies and exempts such developments from the rule-promulgation requirements of the Administrative Procedures Act, such policies must nonetheless be consistent with federal Medicaid statutes. See *Hegadorn*, 503 Mich at 246-247. An administrative interpretation of a state statute by those charged with its execution is entitled to respectful consideration, but such an administrative interpretation is not controlling and may not overcome a statute's plain meaning. *In re Rovas Complaint*, 482 Mich 90, 103, 117-118; 754 NW2d 259 (2008). Indeed, statutes granting power to an administrative agency are strictly construed. *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 136; 807 NW2d 866 (2011).

42 USC 1396a(A)(17) authorizes the DHHS to include, *in its State plan*,[7] "reasonable standards . . . for determining eligibility," but 42 USC 1396a(a)(18) requires compliance with 42 USC 1396p, which requires participating states to impose divestment penalties for disposition "of assets for less than fair market value," 42 USC 1396p(c)(1)(A), but also states that

> [a]n individual shall not be ineligible for medical assistance by reason of paragraph (1) to the extent that . . . a satisfactory showing is made to the State . . . that . . . (*ii*) the assets were transferred exclusively for a purpose other than to qualify for medical assistance . . . . [42 USC 1396p(c)(2)(C)(*ii*).][8]

The phrase "shall not" designates a prohibition. *1031 Lapeer LLC v Rice*, 290 Mich App 225, 231; 810 NW2d 293 (2010). Therefore this federal provision, 42 USC 1396p(c)(2)(C)(*ii*), prohibits state Medicaid programs from imposing a divestment penalty without considering the claimant's evidence that "the assets were transferred exclusively for a purpose other than to qualify for medical assistance . . . ."

As written, *BEM 405*'s personal-care contract policy does precisely what 42 USC 1396p(c)(2)(C)(*ii*) prohibits: instituting an irrebuttable presumption of divestment in the absence of a policy-compliant written and notarized contract. *BEM 405*'s personal-care and homecare contract requirements are therefore inconsistent with federal law. See *Wis Dep't of Health &*

---

[7] The State plan, unlike the *BEM*, must be submitted to the CMS for federal approval. 42 CFR 430.10 and 42 USC 1396a(a)(18).

[8] In construing a statute, the court should, to the extent possible, give effect to every phrase or clause. *US Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n* (*On Rehearing*), 484 Mich 1, 13; 795 NW2d 101 (2009).

*Family Servs*, 534 US at 479; *Hegadorn*, 503 Mich at 246-247.

### III.  CONCLUSION

We affirm the circuit court's conclusion that the personal-care and homecare contract requirements in *BEM 405* are inconsistent with federal law, and we further conclude that *BEM 405* must be applied in a manner that does not create an irrebuttable presumption resulting in a divestment penalty.  We also vacate the circuit court's reversal of the ALJ's decision to uphold the imposition of a divestment penalty, and we remand for the ALJ to reevaluate divestment under the proper legal framework.  We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ Daniel S. Korobkin
/s/ Christopher P. Yates